## Harwood, Adm'r, v. Harper et al.

### Final Settlement of Administration.

1. *Statute of limitations; what removes bar of.*—Prior to the Code, a partial payment made before the bar of the statute of limitations was perfect, would prevent its running, and would remove the bar, if complete; but since the Code, a partial payment will not remove the bar after it has attached.

2. *Administrator; right of to retain for debt barred by statute.*—An executor or administrator may retain, out of personal assets, for a just debt due himself, though it be barred; but he cannot revive a debt already barred, or retain for it, so as to affect the devise or descent of real estate.

3. *Same; when becomes owner of debt due estate.*—Where an executor or administrator, failing to collect a note due the estate, is charged with the amount on final settlement of the administration, the note is not thereby extinguished, but becomes his individual property.

4. *Same.*—Where a note due an estate is thus acquired by the executor, and he seeks to retain for it on his administration of the estate of the maker of the note, legatees of the latter cannot raise any question as to the distribution of the amount on the settlement of the first estate, or assail the correctness of a decree then rendered ascertaining a balance in his favor.

5. *Payment of note; what admissible to show.*—An executor's deed reciting a sale of his testator's land, under order of the probate court, on a credit, and that the conveyance to the purchaser was afterwards made under the order of that court, although it does not acknowledge payment, has a tendency, however slight it may be, to show payment of the purchase money, and is admissible evidence on an issue as to such payment.

6. *Same ; what inadmissible.*—Evidence of the husband of a surety upon a note executed by her mother to a son, in payment of lands sold by him as executor, to the effect that witness had not been notified of the existence of the note during the life of the principal, is not admissible evidence to show that the note had been paid; especially when there was no inability of the principal to pay, and the son, with whom she lived on intimate and confidential relations, looked to her alone for payment.

7. *Revised Code, § 2704 of; competency of witness under.*—On final settlement of an administration, a legatee or distributee contesting the settlement, is not a competent witness, on her own behalf, under section 2704 of the Revised Code, to prove that the decedent made a loan to the administrator, and thereby charge him with the amount.

8. *Probate court, decree of, on facts; when disturbed on appeal.*—The decree of the probate court on issues of fact arising on settlement of administrations, will not be reversed unless it is manifestly wrong; but where illegal evidence is admitted, the presumption of injury arises, compelling a reversal, unless the remaining evidence is without conflict, and supports the judgment.

APPEAL from Probate Court of Sumter.

This was an appeal by Samuel B. M. Harwood, from a de-

cree rendered by the probate court on his final settlement, as administrator *cum testamento annexo* of the estate of Elizabeth D. Harwood, on the 14th day of September, 1874. His settlement was contested by the heirs and legatees.

Samuel B., the appellant, had been executor of his father, S. M. Harwood, deceased, and said Elizabeth was his mother.

Among the credits claimed by appellant was the amount due upon a note given by Elizabeth to appellant, as executor, for lands of said Samuel Harwood, deceased, sold under order of the probate court. This note was dated June 6th, 1859, payable twelve months after date, signed by the testatrix and two of her children (contestants in this case), as her sureties. On it was endorsed by appellant a credit for $500, received July 27th, 1871.

The allowance of the note was objected to on the grounds that it was barred by the statute of limitations, and had, in fact, been paid; and it was alleged that the credit endorsed thereon, was, in fact, a loan of money to him by the testatrix, for which he was justly chargeable.

The exact date of the death of said Elizabeth is not shown, though a witness testified that she died in the latter part of the year 1871. The execution of the note was not denied, nor that it was given for lands of S. M. Harwood, which appellant sold as executor. It was claimed, however, that the note had been in fact paid.

It appears from appellant's testimony, as well as from the record of his final settlement of his father's estate, made in the year 1860, that the note not having been paid, was charged to him in the account, and that upon his final settlement, that estate was indebted to him in a small amount. Appellant testified that on that settlement, after the amount of the note was charged against him, it was turned over to him as his individual property, and he had ever since held it as such, and nothing had ever been paid on it except the $500 endorsed as a credit thereon. Upon this testimony and the introduction of the note, appellant rested.

Upon cross examination appellant was asked: "Did you distribute the money mentioned in the note?" Appellant objected to this question, but his objection was overruled, and the court compelled him to answer, and he excepted. Witness having answered that the estate was indebted to him, the contestants asked how the indebtedness arose. The appellant objected to this question, but his objection was overruled and he excepted. The contestants then offered in evidence the petition for the sale of S. M. Harwood's lands; also his will; the report of the sale of the lands; the report of the distribution of negroes; the report of the assignment

[Harwood, Adm'r, v. Harper et al.]

of the dwelling house to testatrix, the widow of S. M. Harwood; the deed made by appellant to testatrix for the land; also a deed made by Elizabeth Harwood to appellant, dated 21st September, 1860; also a deed of Samuel B. M. Harwood and his wife, to said Elizabeth, dated the 31st day of May, 1859; and also the will of said Elizabeth.

The bill of exceptions recites that "to the introduction of each of these papers, as severally offered, the administrator severally objected, and each of said several objections was severally overruled, and the papers introduced in evidence, and the administrator severally excepted."

The deed made by Harwood, as executor, to said Elizabeth, of the lands sold her, belonging to the estate of S. M. Harwood, recited the sale under the order of the probate court, and her purchase on the 6th of June, 1859, for fifteen hundred and seventy dollars, payable one year thereafter, with interest from date; and that afterwards, on the 10th day of September, 1860, the probate court made an order directing him to convey title to the said Elizabeth.

The deed from Elizabeth to the appellant, dated September 21st, 1860, recites that it was made in consideration of appellant's having "assigned and delivered to her E. A. Roberts' and Elisha Lacy's bond for title for a certain parcel of land, in the town of Gainesville," and for the further consideration that appellant should pay the balance of the purchase money due on said lands when the same fell due."

The contestants then introduced Dr. Pearson, the husband of Cordelia, who was one of the contestants, and a surety on the note in question, and asked "if he had ever been notified about his wife's being surety on note." Appellant objected to this question, but his objection was overruled, and he excepted. The witness testified that the note was never presented to him or wife. He further testified, against the objection and exception of the appellant, that "not until after testatrix's death had he heard that appellant had the note. The witness then testified to a conversation between himself and appellant, some three or four months after testatrix's death." Contestants proposed to re-examine the witness; the appellant objected; his objection was overruled, and appellant excepted. Elizabeth Harper, another contestant, testified that she "never heard appellant say anything of his mother's indebtedness to him." She was then asked if she had ever heard appellant "say that testatrix did not owe him anything?" This question was objected to, as leading. The objection was overruled and appellant excepted. The witness then testified, that she had heard him say "he did not have a scratch of a pen against her." This was just af-

(42)

[Harwood, Adm'r, v. Harper et al.]

ter the contract, about the exchange of places. Witness continued as follows : " I am now living on the place for which my mother exchanged." The question was then asked, " Do you know anything of any money transactions between him and her ?" The question was objected to, on the ground that witness was a party to the settlement, and a legatee and devisee under the will of the deceased whose estate was being settled, which facts were admitted. The objection was overruled, the question answered, and the appellant excepted. The witness then testified, that appellant borrowed $500 in gold from testatrix, in July, 1871.

Contestants next introduced James E. Hart, another contestant, who testified that he was intimate with appellant, and that he (appellant) resided on the lands of his father; that there was no change of possession after the sale. "Mrs. Harwood lived on the old home place until 1860. She had thirty-one acres of land allotted to her under her husband's will. Appellant came to me in Gainesville and said he wished to consult about buying the Roberts place, and that he wanted to exchange the house and lot in Gainesville for the thirty-one acres of his mother. Afterwards Mrs. Harwood (testatrix) moved in, and appellant moved out." The appellant " objected to any conversation, or oral proof, as to the consideration of the exchange of lands, in contravention of the deed which contestants had already introduced;" but the objection was overruled, and the statement as to the purpose of the trade was introduced in evidence, and appellant excepted.

The appellant then introduced the depositions of a witness proving the declarations of the testatrix, about the year 1868, to the effect that she owed the note in question, and did not know how she could pay it unless she sold her house and lot. Appellant then testified about the five hundred dollars, and that it was paid as a credit on the note.

Much testimony was introduced, and in many respects conflicting, as to whether the note was not paid by certain dealings and transactions between the appellant and the testatrix during her life ; but it is unnecessary, in the view the court took of the case, to set it out.

The court refused to allow the credit for the note, and charged appellant with the five hundred dollars, as for so much money borrowed from the testatrix.

The refusal to allow the amount due on the note, charging appellant with the $500, and the various rulings to which exceptions were reserved, are now assigned as error.

SNEDICOR & COCKRELL, for appellant.—The executor under
Vol. liv.

[Harwood, Adm'r, v. Harper et al.]

the facts had the right to retain for the debt evidenced by testatrix's note.—*Milan v. Ragland*, 19 Ala. 85; 36 Ala. 117; 8 Ala. 552. When appellant accounted for the note, he became the owner.—36 Ala. 117; 19 Ala. 552; 19 Ala. 85. The fact that the note was barred does not affect the administrator's right to retain out of *personal* assets.—28 Ala. 484; 7 Ala. 404; 9 Ala. 502. He is not bound to plead the statute of limitations, and the heirs cannot plead it for him.—25 Ala. 79. The questions as to the consideration of the deeds was inadmissible. The consideration thus recited could not be contradicted by oral proof. The inquiry as to Cordelia's husband not knowing about the note, was clearly immaterial. The heirs and legatees are not competent to prove transactions with the deceased, so as to charge the administrator.

COOK & LITTLE, *contra.*—When appellant charged himself with the note on the settlement of his father's estate, the debt was extinguished.—40 Ala. 437; *Wray v. Cox*, 24 Ala. 337. He was not bound to charge himself with it, unless he wished to. His doing so is a voluntary payment; the presumption is that he paid it out of the assets in his hands. The possession of the note is not enough in this case. Appellant may have obtained it among the papers of his testatrix, after her death.—*Bates v. Vary*, 40 Ala. 439. The note in dispute here, was barred at the time of the testatrix's death. Appellant could have sued on it at any time after he claims to have become owner, after the settlement of his father's estate.—*Sims v. Sims*, 30 Miss. 333.

BRICKELL, C. J.—This was a proceeding by the appellant, as administrator, with the will annexed, of Elizabeth D. Harwood, deceased, for a final settlement of his administration. On the hearing in the court of probate, several of the legatees contested the legality and justness of a credit claimed by the appellant for the principal and interest of a promissory note, made by the testatrix in her life, payable to the appellant as executor of the will of Samuel M. Harwood; and also claimed to charge the appellant with the sum of five hundred dollars, entered as a credit on said note, as in fact money loaned by the testatrix to the appellant. The objections to the note were that it was barred by the statute of limitations, and had, as alleged, been in fact paid. Much evidence was introduced in support of and in answer to the objections, and on the point whether the credit on the note was a payment thereon or a loan to the appellant. The rulings of the court to which exceptions were taken, relate to the admission of evidence, and the rendition of a decree

[Harwood, Adm'r, v. Harper et al.]

excluding the note as a credit, and charging the appellant with the five hundred dollars endorsed thereon as a credit, as in fact a loan to him.

It is not disputed that the note was made by the testatrix, and on a sufficient consideration, payable to appellant, as executor of Samuel M. Harwood. It bears date June 6th, 1859, and is payable twelve months thereafter, with interest from date. The credit endorsed is of date July 27th, 1871. The time of the death of the testatrix does not appear, otherwise than from the statement of one witness, that it was in the latter part of the year 1871. Deducting the period of time elapsing between January 11th, 1861, and the 21st September, 1865, as prescribed by Ordinance No. 5 of Convention of 1865, the statute of limitations perfected a bar of the note, on the 18th day of March, 1871, before the alleged payment was made. A partial payment, prior to the Code, would, if made before the bar of the statute was perfect, prevent its running, and it would also remove the bar if complete.—*Watson v. Dale*, 1 Port. 247 ; *McGehee v. Greer*, 7 Port. 537. These authorities also established that though the payment was endorsed on the note, the party relying on it to prevent or remove the bar of the statute, must affirmatively prove that the payment was made, and its date.—*Knight v. Clements*, 45 Ala. 98 ; 2 Green's Ev. § 440. The Code has now changed the law, so that a partial payment will not remove the bar when it has attached, though it will prevent it from attaching until the prescribed period elapses after the time of its making. An unconditional promise in writing only, will now remove the bar of the statute.—R. C. § 2914. The note was, therefore, barred in the life time of the testatrix, before the partial payment, and that payment, if made, had not the effect of reviving it as a debt. It seems that at common law, though there is some contrariety of decisions on the point, an executor or administrator could retain for a debt due himself, though it was barred by the statute of limitations.—2 Williams' Ex'rs, 902 ; 1 Lomax on Ex'rs, 654. This court, in the case of *Knight v. Godbolt*, 7 Ala. 304, affirmed that the administrator had the right to retain for any just debt due himself, although within the bar of the statute. The reason given is, that he could pay the debt of another, which was barred by the statute, and of consequence could pay himself. The decision to which we have referred, having stood for thirty years, cannot now be departed from. It was not material, therefore, on the contest in the court below, whether the note was barred by the statute of limitations or not. The fact of its execution on a sufficient consideration, not being disputed, the only inquiry

was, whether it had been paid. It must be borne in mind, however, that an executor or administrator cannot revive a debt barred by the statute, nor retain for one due himself, so as to affect the devise or descent of real estate.—*Bond v. Smith*, 2 Ala. 660; *Movers v. White*, 6 John. Ch. 360.

The note was certainly assets of the testator of appellant, given for the purchase money of lands sold by appellant as executor, in his representative capacity. That the appellant had made a final settlement of his executorship, and on such settlement had been charged with the note in the life time of the testatrix, as if he had collected it from her, was shown by the record of the settlement, and does not appear to have been controverted. Thereby the note became his property, and he could have sued thereon, in his own name, or pleaded it as a set off to an action against him, founded on any debt due from him individually to the testatrix.—*Hall v. Chenault*, 13 Ala. 710; *White v. Word*, 22 Ala. 442; *Waldrop v. Pearson*, 42 Ala. 636; *Dunlap v. Newman*, 47 Ala. 439. The note was not thereby extinguished as insisted by the counsel for the appellee. It remained a subsisting debt against the testatrix, she being afterwards the debtor of appellant individually, and not in his representative capacity. It was not material whether he had paid the amount of the note to those entitled to distribution of the assets of his testator or not. Satisfaction of their demands against him for the amount of the note, as charged in his final settlement, was not essential to his right of property in the note. That right became perfect when the decree was rendered, charging him with it, on his final settlement.—*Waldrop v. Pearson, supra.* It was not proper, therefore, for the court to permit the appellees to inquire of the appellant, on his cross-examination, whether he had distributed the money mentioned in the note, nor, when he answered negatively, and assigned as the reason it was not distributed was the indebtedness of the estate to him, to inquire further into the manner of that indebtedness. All such evidence was wholly irrelevant. The record of the final settlement disclosing he had been charged with the note, whether that charge was proper or improper, or whether he had fairly accounted for the note to his *cestuis que* trust, or had retained it in satisfaction of an unjust demand, was foreign to the issue before the court. The decree on the final settlement, ascertaining a balance due him from the estate, although he is charged with the note, was conclusive of his right, and incapable of impeachment in this proceeding.

Nor was it permissible, so far as this record discloses, for the court to permit the introduction of appellant's petition

[Harwood, Adm'r, v. Harper et al.]

for the sale of the lands of his testator, the purchase money of which was the consideration of the note; nor the will of his testator; nor the report of sale, nor the distribution of slaves. All these records were irrelevant, and their introduction could produce only confusion, obscuring the real inquiries before the court. The deed made by the appellant as executor, conveying the lands to the testatrix, though it does not recite the payment of the purchase money, was admissible as a fact, having some tendency, however slight, to show the purchase money, the consideration of the note, had been paid, and was properly admitted. The deed made by the testatrix to the appellant of the lands she had purchased, expresses a specific consideration—the transfer of the bond for title of a third person, to lots in the town of Gainesville, and the covenant of the grantee to pay the unpaid purchase money of such lots. No evidence was offered that payment of this note was its consideration. Such a consideration is wholly variant in character from that expressed. Whether it could be proved in opposition to the terms of the deed is not a question presented.—*McGehee v. Rump*, 37 Ala. 655; *Murphy v. Br. Bank Mobile*, 16 Ala. 90.

The deed was irrelevant, and ought not to have been received in evidence.

The evidence of the witness Pearson, that he had intermarried with one of the sureties on the note, a daughter of the principal, and had not been notified of the existence of the note, during the life of the principal, was not admissible. It had no bearing on the inquiry, whether the note had been paid. There was no inability to pay on the part of the principal, and no reason shown to exist for giving him notice. It is apparent that the principal, the testatrix, and the appellant, her son, lived in the most intimate and confidential relations, and that to her alone he looked for payment, and not to the sureties,' who probably were required and accepted in the first instance only to comply with the statute regulating sales of lands by executors or administrators. No reasonable inference of payment could be drawn from the fact that the witness had not been notified of the existence of the note. The giving such notice to him, if it could have served any purpose, would only have induced the witness, for the protection of his wife, to insist that it should be collected by suit, or his wife released, or to have demanded indemnity from the principal. The appellant would have avoided, rather than subjected his mother to such vexation.

The re-examination of a witness, or permitting a party to propound to his own witness a leading question, is matter of discretion, in the primary court, not revisable on appeal.

One of the contestants against the objection of appellant, was permitted to prove that in July, 1871, the appellant borrowed of the testatrix five hundred dollars in gold. The objection was founded, we suppose, on the exception in the statute, "that in suits or proceedings by or against executors or administrators, neither party shall be permitted to testify as to any transaction with, or statement by the testator or intestate, unless called to testify thereto by the opposite party."—R. C. § 2704. In *Kirksey v. Kirksey*, 41 Ala. 626, the final settlement of an executor or administrator, was held a proceeding within the meaning of this statute, and that the distributees were not competent as witnesses to testify in reference to the genuineness of the intestate's signature to a note claimed by the administrator to be due him. The reason assigned is thus stated: "To allow the administrator to testify as to the signature to the note *in controversy*, would be allowing him to testify as to a transaction with the intestate, within the meaning of the statute, and he would, therefore, be an incompetent witness, under the act, *for that purpose;* and hence the other parties must be held to be incompetent." The first case arising under this statute, which came before this court, was that of *Stuckey v. Bellah*, 41 Ala. 700, a suit against a defendant individually for a conversion of a gold watch, which the plaintiff had an election to commence against him as an administrator, or as an individual. The plaintiff claimed the watch as a gift from the intestate, and was received as a witness to prove it. It was held the purpose of the exception in the statute was to prevent a living party from establishing, by his own evidence, a right in himself, against the dead, who could not be heard in answer to him; and to remove the temptations to fraud and perjury, which the opportunity of testifying without the fear of contradiction would afford. This purpose, the plaintiff having an election of suit, could not defeat, by suing the personal representative individually, rather than in his representative capacity. The evidence of the living, as to transactions with, or admissions or declarations of the dead, is in its nature *ex parte;* and if it be right that the living, who can confront each other, should be witnesses when they have a direct, immediate interest involved, it cannot be just to permit them to testify when they alone have the opportunity of being heard. In the operation of the rule of exclusion, there must be mutuality. If the party is excluded from establishing a claim in his own favor against the dead, those who have succeeded to the rights of the dead, and stand to the living in the relation of adverse suitors, must not be permitted to fix on him a liability to the dead, which he cannot repel by

his own evidence. If the contestant was a competent witness to prove the loan by the testatrix to the appellant, he must have been competent to disprove it, or to prove its payment to her. Thus he would, in violation of the words of the statute, and of its policy, have been testifying as to a transaction or statement had with the deceased, under the temptations which an acquittance from liability would present. His competency to prove payment or to prove any transaction or statement with the testatrix would not be insisted on, and without destroying all mutuality in the operation of the statute, the contestant was equally incompetent, and the court erred in admitting her evidence.

The court of probate, on the settlement of administrations, determines questions of fact without the intervention of a jury. Its action upon the whole evidence thus becomes matter of law, revisable on error. It has grown to be a rule of practice not to reverse its judgment on the facts unless it is manifestly wrong. In *Boyle v. Boyle*, 23 Ala. 544, it is held, when the whole evidence is set out, its judgment should not be reversed, if rejecting illegal evidence which may have been received, enough remains to support it. In *Mims v. Sturdevant*, 23 Ala. 664, the decree of the court was reversed for the single error of admitting incompetent evidence, though it was urged the admission of such evidence worked no injury, as without it there was abundant evidence to support the decree. The court said in answer: "It is true the bill of exceptions sets out much other evidence, but it is not for this court to say that the proof was abundant without the evidence in question, and that therefore no injury could arise from the admission of the testimony. The rule of this court is, that it will presume injury from error, unless the record itself rebuts the presumption. This the record, in our opinion, does not do. We may have our own private opinion as to which side has the advantage in the weight of testimony offered, but we cannot pretend to say the court below was not materially influenced by the evidence in question. If the defendants in error would avail themselves of the principle which they invoke, they should show by the bill of exceptions, or in some other manner by the record, that the court below was in no respect influenced by the testimony admitted, or that no injury resulted to the plaintiff in error from the ruling of the court." Again it is said, the question was one purely of the competency of the evidence offered. In *Kirksey v. Kirksey*, 41 Ala. 626, without any reference to former decisions, it was said, in revising the decree of the court of probate on a final settlement, each assignment of error relating only to the admission or rejection of evidence, that

[Harwood, Adm'r, v. Harper et al.]

"in passing on the merits of the case, we must look at the evidence, as the probate judge should have done; and, consequently, no injury will result from the admission of illegal or irrelevant testimony." The decree of the court of probate was reversed, and yet the only errors the court could have committed was in the admission or exclusion of evidence. It cannot be doubted that when illegal evidence is admitted, or legal evidence excluded, on a trial before a jury, the error creates presumption of injury, compelling a reversal, unless the presumption is repelled. We do not propose now to examine the various decisions on the point, but a critical analysis of them will result in this, that the evidence admitted, or rejected, discarding all considerations of its credibility, was merely superfluous or cumulative, when the presumption of injury has been regarded as repelled. The court has never assumed to enter the jury box, and say the jury ought not to have been affected by the evidence admitted, or could not have been by the evidence excluded, if it had been admitted. It is enough that the one or the other could have had a legitimate influence on the jury. How far the jury ought to have been controlled by the one or the other is a matter resting in the honest, enlightened and just discretion of the court, on a motion for a new trial. In our system, the judge is often substituted for the jury, and is made not only to declare the law, but is the trier of facts. From his judgment an appeal lies to this court. The record discloses all the evidence, and that parts of it were admitted, against the party complaining of error. How can this court pronounce judgment? A judgment should never be reversed here, unless it can be said, in the language of the common law writ of error, there is "manifest error to the great prejudice" of the party appealing. When error is found, the presumption of prejudice or injury arises, and unless it is clearly repelled, a reversal must follow. If illegal evidence has been admitted the judgment must be reversed, unless the remaining evidence is without conflict, and supports the judgment. When there is conflict, and the judgment can be supported only by an inquiry as to the credibility of the witnesses, and the preponderance of evidence, it is better to submit that question anew to the decision of the primary court, which can have the witnesses before it, and observing their demeanor, is the better able to pass on their credibility. Discarding the evidence we have declared inadmissible, that remaining is in painful conflict, and without expressing an opinion as to its weight, we are not prepared to render judgment on it.

For the errors noticed, the decree must be reversed and the cause remanded.