# Dabney *v.* Mitchell.

*Application for Substitution of Lost Probate Decree.*

1. *Probate decree on evidence; how considered on appeal.*—In proceedings before the Probate Court, where they assume an adversary form, and involve questions of fact, the findings of the judge have much of the force and effect of the verdict of a jury; and though his decision is revisable on error, when all the evidence is set out in the record, it will not be disturbed, unless manifestly erroneous.

2. *Competency of probate judge as witness, in proceeding before himself.*—A probate judge is incompetent to testify as a witness, in a cause or proceeding tried before himself; and when a cause is tried before him on affidavits, his

[Dabney v. Mitchell.]

own affidavit, though taken before another officer, is not admissible as evidence.

3. *Impeaching witness, by proof of inconsistent declarations; counter affidavits.*—Where it is proposed to impeach a witness by proof of inconsistent declarations made out of court, he must first be allowed an opportunity to explain such declarations, by directing his attention, on cross-examination, to the particular time, place, person and matter involved ; but, where the evidence consists entirely of affidavits, an exception to this rule necessarily prevails, and such inconsistent declarations may be proved by counter affidavits.

4. *Relevancy of evidence as to existence of lost record.*—On motion to substitute a probate decree alleged to have been lost, the former existence of which is denied ; the probate judge having testified to the rendition of the decree, and its entry in a book kept by him, though it was not entered on the minute-book kept by his clerk ; a witness who was frequently in the office, and saw the clerk writing there, may testify that "he saw the clerk entering up minutes from the order-book kept by the judge, that he copied said orders from a form-book, and that he never saw him copying decrees from any other book :" such testimony tends, though slightly, "to show that, if the decree had ever existed, it would not have been found elsewhere than on the book in which it was said to have been entered by the judge."

5. *Same.*—The alleged lost decree being a decree rendered on the final settlement of a guardian's accounts, the record of a proceeding to amend the decree *nunc pro tunc,* at a term subsequent to the alleged loss, and an account-current for final settlement subsequently filed, being inconsistent with the alleged lost decree, are relevant evidence on the motion to substitute.

6. *Same.*—The minute-book of the court, containing entries of its proceedings, and of all decrees similar to that claimed to have been entered elsewhere, but showing no entry as to the particular decree in controversy, is also relevant and competent evidence.

7. *Substitution of lost record; when allowed.*—The substitution of an alleged lost record "should be made only on clear and satisfactory evidence of the former existence, contents, and loss of the alleged record ; and if the evidence leaves the matter doubtful, or uncertain, the motion ought to be denied."

APPEAL from the Probate Court of Randolph.

This was an application by Peter Mitchell, guardian of Martha E. Dabney and others, minors, for the substitution of an alleged lost decree, said to have been rendered by said court, on the 23d February, 1867, on final settlement of his accounts and vouchers as such guardian. The petition was filed on the 1st May, 1877, and set out what purported to be a copy, and was alleged to be a substantial copy, of the decree said to have been lost or destroyed. It was verified by the oath of the petitioner, and was accompanied with an affidavit by R. S. Heflin, ex-judge of probate, by whom the decree was said to have been rendered, as to the rendition of the decree, and the correctness of the copy proposed to be substituted ; and in the notice served on the defendants, to which a copy of said affidavit and copy-decree were annexed, they were notified that the petitioner would rely on said affidavit "to prove that the paper writing hereunto attached as an exhibit, purporting to be a copy of said original decree, contains the substance of said original decree."

The decree, as set out in the said copy, is entitled "Probate Court of Randolph county, Alabama ; Special Term,

[Dabney v. Mitchell.]

February 23d, 1867," and after reciting the former filing of his accounts by the guardian, and the appointment of that day for the hearing, proceeds thus: "Now comes the said Peter Mitchell, guardian as aforesaid, and moves the court to proceed with such settlement, and that his account be passed and allowed; and it appearing to the satisfaction of the court, by proper evidence, that due notice of the time and nature of this settlement has been given, by posting a written notice at the courthouse-door, and three other public places in said county, for three weeks successively, prior to this date; and D. L. Davis, who was heretofore appointed to act as guardian *ad litem* for, and to represent and protect the interests of said" minors, naming them, " now appearing in open court, consenting in writing to act, and contesting said settlement; the court proceeds to hear the proof in relation to said account. Whereupon, it is shown and appears that said guardian has received, of the assets of said wards jointly, the sum of $2,165.75 in money; that he has also expended justly, in and about the costs and charges necessary and attendant upon said guardianship, and in the purchase of lands for said wards, as per order of this court, the sum of $2,165.75, leaving nothing in the hands of said guardian; the titles for said lands having beeen delivered to Elizabeth Dabney, who has this day qualified and given bond for the guardianship of the said heirs; and the said account appearing to be full and correct; it is therefore ordered, adjudged, and decreed by the court, that the said account be, and the same is hereby, in all things passed and allowed, as above stated, and that said guardian be, and he is hereby, discharged from all further trust or liability as such guardian. It is further ordered, that all accounts, evidences and statements on file, relating to this or any former settlement, and all other paper writings on file in this case, be recorded."

The accompanying affidavit of said Heflin stated, "that he was judge of probate of said county on the 23d February, 1867; that Peter Mitchell, guardian of the minor children of Anderson B. Dabney, deceased," naming them, "made a final settlement of his said guardianship, and on said settlement a final decree was rendered, and enrolled by being entered on the minutes of said court, at that term of said court; which decree was substantially in the words and figures following," setting out the copy as above; and the affidavit then proceeded thus: "The above and foregoing is a substantial copy of the original decree that was rendered, and enrolled by being entered on the minutes of said court, at said term, which has been lost, or mislaid, or destroyed, and can not be found."

The application to substitute was contested "by the defendants in the motion," who were the minors interested in the settlement; and on the hearing, as is recited in the decree, and also in a bill of exceptions reserved at their instance, they "filed a counter affidavit made by W. W. Dobson," who was the successor of said Heflin in the office of probate judge, and held the office from August, 1868, to November, 1874. The following are the material parts of this affidavit: "Said Heflin, when his term of office expired, turned over to this affiant, among other things, '*Minute Book E*,' which contains the orders and decrees made by said Heflin as probate judge for said county, from the 26th August, 1865, to the 27th July, 1868, both inclusive; and upon which this affiant, as such probate judge, enrolled his decrees and orders, commencing where said Heflin left off, until said book was filled; and which book is now in the office of the probate judge of said county. On the 11th May, 1877, this affiant carefully examined said book, and found that it contained orders and decrees of said Heflin as probate judge, all along from August, 1865, to the 27th July, 1868; which said orders and decrees are embraced in the 345 pages of said book; and said book contains, on pages 194–5, a decree made by said Heflin, as probate judge, on the 23d February, 1867. Affiant has carefully examined said book, and no page or leaf thereof, nor any part of any page or leaf, from the first to 345, inclusive, is lost, destroyed, or misplaced; and there never was in said office, during affiant's term of office as probate judge, any other book than this, containing any decrees or minute-entries, or any decree or minute-entry made by said Heflin as probate judge."

The petitioner then asked leave to file a "supplemental affidavit" by said R. S. Heflin, and to amend the notice so as to show that he would rely on such supplemental affidavit. In this affidavit said Heflin stated, "that he is confident a final settlement was made on the 23d February, 1867, by said Peter Mitchell as guardian of said" minors. "At the time of said settlement, affiant was afflicted with an injury to the middle finger of his right hand, which almost disabled him from writing; and at and on said settlement he made a written memorandum of said settlement, on paper, containing all the *data* needed to draw the final decree. This memorandum was preserved, and after the time of said settlement a final decree, as rendered on and of the said 23d February, 1867, was entered at length on a minute-book of said court, in which such decrees in other similar cases rendered by him as probate judge were entered. The decree rendered on said final settlement by said Mitchell was entered in a

book kept by affiant as probate judge as a record of said court, and as a minute-book in which were entered, at and about the time of said settlement, the minutes, orders and decrees, and the proceeding of affiant as judge of probate, and of the Probate Court of said county. The said book, in which said final decree was entered, was a book used and kept by affiant in said Probate Court, in which all decrees of the same character were entered, and is a different book from said ' *Minute Book E*,' which was also kept in said Probate Court, and in which there appears to be entries of the orders and decrees of this affiant as probate judge on or about the 23d February, 1867. The best recollection of affiant is, that the book in which said final decree was entered was obtained from W. C. Robinson, and was used and kept in said probate office as a record of the 'minutes of the proceedings of the judge of probate, and of said Probate Court, and is a different book from said ' *Minute Book E*.' At and about the 23d February, 1867, it frequently occurred that, on a final settlement of a guardianship or administration in said court, written *data* of the settlement and the decree to be rendered were made, and the decree was drawn and entered in the minute-book, as of the date of the settlement, days and weeks subsequent to the settlement. When affiant went into said office, in 1865, there was a scarcity of books to be used as minute-books and other records ; and he used for some time, as a minute-book, a book then in the office which had been used by his predecessor, T. L. Pittman, for keeping an account of rations during the late war ; and he afterwards obtained from W. C. Robinson the book above mentioned, in which said decree was entered. Afterwards said book, lettered ' *Minute Book E*,' was obtained from Atlanta, Georgia, and was kept and used in said office as a minute-book ; and the orders and decrees rendered and entered, as aforesaid, on the other books above mentioned, were copied, and intended to be copied, in said ' *Minute Book E*,' now remaining in said office. Said final decree, rendered on said settlement by said Mitchell, does not appear in said book ' *E*;' nor do other orders and decrees appear therein, which were entered on said other book procured from Robinson, which has been so mutilated, by means unknown to this affiant, that the lids and back is all that remains of it in said office ; and by such mutilation of said book, said decree rendered on said final settlement by said Peter Mitchell has been lost ; and affiant verily believes that said final decree was omitted by mistake in transcribing the orders and decrees, from said book obtained from Robinson, into said book lettered ' *Minute Book E*;' and by such mistake, or

[Dabney v. Mitchell.]

oversight, in transcribing said orders and decrees, said final decree does not appear in its proper place in said book ' *E*.'"

The defendants objected to the allowance of the proposed amendment, and also to the admission of this supplemental affidavit, "on the ground that it was a departure from the original;" and their objections having been overruled, to which they duly excepted, they "asked leave to prepare counter affidavits," and the cause was continued for that purpose. On a subsequent day, on which the hearing of the cause was resumed, the defendants offered in evidence the affidavit of D. L. Davis, the probate judge before whom the cause was pending, who had been the clerk of said Heflin during his incumbency of the office ; and who stated, in said affidavit, that he made all the entries in said book ' *E*' ; that he made up said decrees and orders, as therein entered, "from the memoranda made by said Heflin on the docket kept by him at the time, and not from any other minute-book kept in said office ; that on said book ' *E*,' so kept by him, from page 80 to page 345, are entered the orders and decrees of said court, alll along from the 3d September, 1866, to the 27th July, 1868 ; and that an order is enrolled on page 183, appointing a day for the hearing of the accounts and vouchers of said Mitchell, guardian as aforesaid." This affidavit was taken and subscribed before the clerk of the Circuit Court. The petitioner moved to exclude it, " on the ground that said Davis was not a competent witness, he being the presiding judge." The court sustained the objection, and excluded said affidavit ; to which ruling the defendants excepted.

The defendants then offered in evidence the affidavits of M. M. Teague, Robert H. Bolt, W. W. Osborne, and D. D. Smith. Said *Teague* stated, in his affidavit," that in the year 1875, about the time the motion made by said Mitchell to enter a judgment *nunc pro tunc*, discharging him as guardian of the heirs of A. B. Dabney, deceased, and to substitute an order for a lost order authorizing the rendition of said judgment *nunc pro tunc*, came on to be heard, said R. S. Heflin told him (affiant), R. H. Bolt, and W. Ivey, that his recollection was that he wrote a final decree, discharging said Mitchell from said guardianship, and passing and allowing his accounts as such guardian : that he wrote said decree in pencil on a piece of paper, and intended to have it entered on the minutes of the court ; but said piece of paper was lost, and on that account said final decree was not enrolled on the minutes of the court. Said Heflin showed us how he held his pencil, on account of his sore finger ; and he said that was the reason why he wrote with a pencil, and that

[Dabney v. Mitchell.]

'Lem,' meaning said D. L. Davis, neglected to enter it on the minutes." Said *Bolt* stated, in his affidavit, "that he was frequently in the office of the probate judge during the year 1866 and 1867, and saw said D. L. Davis, who was then clerking in said office, writing; that he saw him entering up the minutes, from the order-book kept by said Heflin; that said Davis copied said orders from a form-book, and he never saw him copying decrees from any other book." *Osborne* stated, in his affidavit, that one Hodges asked him, some time during the year 1867, to go on the official bond of Mrs. Dabney as guardian of said minors; "that he replied, he would see Judge R. S. Heflin about it, and would go on the bond if he said it was all right;" and that when he saw said Heflin, "a short time afterwards, and asked his opinion and advice about the matter, said Heflin told him to *keep off of said bond—that hell would be to pay.*" *D. D. Smith*, who was one of the attorneys in the case, stated, "that he has been employed as an attorney in said case ever since the trial of the motion to enter a judgment *nunc pro tunc*, tried in January, 1875; that R. S. Heflin has appeared in said case ever since the making of said motion, and has been relied upon as a witness by said Mitchell's counsel, to prove the allegations of the several motions that have been made in the case; that he (affiant) never heard it suggested, either by said Heflin, or by said Mitchell, or any of the attorneys in said case, that a minute-book, containing the decrees of said Heflin as probate judge, had been lost or destroyed, until the filing of the first affidavit made by said Heflin in this case; that he asked said Heflin, on yesterday, to tell him when it was that he transcribed the decrees and orders into said book '*E,*' and Heflin said, in reply, that he could not tell the time, or about the time when said transcribing was done;" and he further testified to the contents of said book '*E,*' and the entry therein of orders and decrees in the hand-writing of said Heflin. The petitioner, said Mitchell, "moved to exclude each of said four affidavits severally, on the ground that each was irrelevant;" which motions the court sustained, and excluded each of said affidavits as evidence, and exceptions were duly reserved by the contestants.

The defendants then offered in evidence "an original notice and the amendment thereto, served upon them by said Mitchell on the 21st January, 1875." This original notice, after reciting that Mitchell had made a final settlement of his accounts and vouchers as guardian, and had been discharged by the court, and that letters of guardianship had been thereupon granted to Mrs. Margaret Dabney as his successor; and that the records failed to show "an order passed

and allowed by said probate judge, authorizing and requiring a final decree to be entered up, discharging said Mitchell as guardian," then notified the defendants that said Mitchell "will proceed by making a motion in said Probate Court, on the 4th day of January, 1875, to establish an order for the lost order, or destroyed order, made in said cause of guardianship by said former probate judge, R. S. Heflin, on the 23d February, 1867." The amendment, as copied in the transcript, is as follows : " That said order, made by said former Probate Court, was reduced to a written memorandum, placed in the file of papers of said cause, in said court where said cause was progressing, and the proper place of custody of said file of papers ; that said order was lost or destroyed from said file ; that diligent search has been made in said office, and among said file of papers, and the same can not be found ; that said order was an order to complete the minute-entry and decree of final settlement and discharge of said guardian, at the February term of said court, 1867. Therefore, the said Peter Mitchell moves said court to complete the record, the same being incomplete on account of the failure to make said entries of record at the time it should have been made, *nunc pro tunc.*" The petitioner "objected to the introduction of said notice and amendment as evidence, on the ground that they were mere pleading, not verified by affidavit, and that nothing but affidavits was admissible in a proceeding of this kind." The court sustained the objection, and excluded the evidence; to which the defendants duly excepted.

" The defendants then offered in evidence said minute-book ' *E,*' to show that it contained orders and decrees made by said Heflin as probate judge, from August 25th, 1865, to July 27th, 1868 ; to which the said Mitchell objected, on the ground that it was incompetent and irrelevant evidence, and that it was a large book, containing 541 pages, all written full, and containing divers orders and decrees for a number of years, having no connection with this case." The court sustained the objection, and excluded the evidence ; to which ruling the defendants excepted. " The defendants then offered in evidence the account for final settlement of his guardianship, filed by said Peter and sworn to by him on the 20th March, 1876, as a circumstance to show that no final decree had been rendered in the case by said Heflin as probate judge, and as an admission by said Mitchell that he had made no final settlement of his accounts as such guardian." To the admission of this account as evidence the petitioner objected, " on the ground that it was irrelevant, and was not offered as an affidavit, or counter affidavit." The court sus-

[Dabney v. Mitchell.]

tained the motion and objection, and excluded the evidence; to which ruling the defendants duly excepted.

"The said motion of said Peter Mitchell was then submitted, on the ground supported by the affidavits of R. S. Heflin and W. W. Dobson; and upon this evidence alone, the court granted said motion; to which judgment the defendants duly excepted."

The several rulings of the court on the evidence, as above stated, and the final decree, are now assigned as error.

C. D. HUDSON, and SMITH & SMITH, for appellants.

J. T. HEFLIN, contra.

BRICKELL, C. J.—The judge of the Court of Probate, in the exercise of the larger part of the jurisdiction with which he is clothed, whenever proceedings in the court assume an adversary form, and questions of fact are involved, stands in the place of both judge and jury. All questions of law are decided by him, and all questions of fact are, of necessity, found by him; for it is in but few cases, of which the present is not one, that a jury may be impanneled to try disputed matters of fact. These are submitted to his decision, and his findings have much of the force and effect of the verdict of a jury. Though his decision, on questions of fact, is revisable on error, when all the evidence is shown by the record, the well settled rule is, not to disturb it, unless it is manifestly erroneous.—*Kirksey v. Kirksey*, 41 Ala. 626; *Harwood v. Harper*, 54 Ala. 659.

In this proceeding, as is allowable, and the usual practice, the evidence consists wholly of *ex-parte* affidavits. These, it was the duty of the judge to examine, carefully and deliberately, and to weigh impartially. Though, as is said by Parker, J., in *Morse v. Morse* (11 Barbour, 510), there is but little to be found in the books on the subject of the competency of a judge to testify in a matter pending before him, it is laid down as a general rule in the elementary books, that he is incompetent, and, so far as we have found adjudications, they support the rule.—1 Whart. Ev. § 400; 1 Greenl. Ev. § 364; *Morse v. Morse*, 11 Barb. 510; *Ross v. Buhler*, 2 Mart. N. S. (La.) 312; *McMillan v. Andrews*, 10 Ohio St. 112. Though, in this case, the affidavit of the presiding judge was taken before an officer having authority to take and certify affidavits, and he was not under the necessity, as judge, of administering to himself an oath as a witness, there remained duties he was bound to discharge, and which he alone could discharge, inconsistent with the rela-

[Dabney v. Mitchell.]

tion of an affiant, or witness. If his competency as a witness was assailed, that question he must as judge have decided. If his credibility was impeached, as judge he must have decided whether his credit was impaired, or destroyed, or sustained. His own testimony, he must have compared with that of the other witnesses; and such a comparison, it is not to be supposed, could have been made impartially. We are of opinion, the judge properly ruled that his affidavit was inadmissible.

When it is proposed to impeach a witness, by evidence that he has made verbal statements out of court, inconsistent with the evidence he gives on the trial, the rule has, in this State, been rigidly enforced, that to avoid surprise, and to afford him a fair opportunity of explaining the inconsistency, if explanation can be made, his attention should, by a cross-examination, be directed, as far as is practicable, to the time, place, and person, as well as the matter, involved in the supposed contradiction.—2 Brick. Dig. 448, §§ 117-121. In this proceeding, as there was no opportunity of cross-examination, the evidence consisting of *ex-parte* affidavits, the attention of the witnesses could not be directed to previous statements made by them, inconsistent with their sworn statements which were before the court. The only mode of introducing such statements was that pursued, by counter affidavits. If these affidavits are inadmissible, the defendants are deprived of their right in this mode to impeach a witness, and the court may be compelled to render a judgment, based on evidence it would reject, if the contradictory statements were proved. The rule is founded in justice and mercy to the witness—it is intended for his protection; and it cannot be allowed to operate, so as to exclude evidence introduced in the only mode in which the party has the right of introducing it. When he has no right, and no opportunity of cross-examination, he can not afford the witness the opportunity of explanation. If the opportunity is claimed, when the affidavits proving the inconsistent statements are introduced, it would lie within the power of the court to receive an additional affidavit from the witness; but the affidavits proving the inconsistent statements of necessity form an exception to the general rule.

No particular objection was stated to the affidavits of Teague and Smith, proving the statements made by Heflin, inconsistent with the statements contained in his affidavits; and we can conceive of none other, than that his attention had not, by cross-examination, been called to his former statements. This was not, in this proceeding, practicable, and the Court of Probate erred in the exclusion of these affi-

[Dabney v. Mitchell.]

davits.   The affidavit of Bolt, showing the course of business pursued in the office of the judge of probate, when it is claimed the last decree was rendered and entered of record, may, of itself, be of but little value; yet it cannot be said to be irrelevant, and without a tendency to show that, if the decree had ever existed, it would not have been found elsewhere than on the book in which it is averred by Heflin to have been entered.   There was error in excluding the affidavit.

We do not see that the advice given Osborne by Heflin is capable of affording any reasonable presumption or inference in reference to any fact in controversy, and are of the opinion it was properly excluded.   The record of the former proceedings in the Court of Probate, to amend *nunc pro tunc* the record now averred to have been then lost, and the account filed by Mitchell for a final settlement, should have been received in evidence.   Each was a proceeding inconsistent with the present proceeding.   If the record of the decree was lost, it was incapable of amendment *nunc pro tunc*.   If such a decree had existed, it was a bar to any other final settlement of the guardianship, voluntary, or compulsory.   The inconsistency between these acts of the appellee and the claim now asserted, it may be, can be satisfactorily explained. They are, nevertheless, proper evidence to be considered in determining a material inquiry in this cause,—the former existence of the decree proposed to be substituted.   The minute-book containing entries of the proceedings of the court, and of all decrees similar to that claimed to have been entered elsewhere, should have been admitted.   It was a very material fact, that this single decree is the only one rendered by the court not found there to have been entered.

In all proceedings of this character, the primary courts should, as was said in *McLendon v. Jones*, 8 Ala. 301, proceed with the utmost caution.   A substitution should be made only on clear and satisfactory evidence of the former existence, contents, and loss of the record proposed to be substituted.   If "the evidence leaves the matter doubtful, or uncertain, the motion ought to be denied."—*Adkinson v. Keel*, 25 Ala. 551.

We do not deem it proper now to consider any other question involved in the assignment of errors.   If they arise again, it will be probably under a different state of facts.

Reversed and remanded.