[Crim. No. 779.　Third Appellate District.—December 20, 1924.]

## THE PEOPLE, Respondent, v. TOM CONNORS, Appellant.

[1] CRIMINAL LAW—CORRUPT ATTEMPT TO INFLUENCE JUROR—CAUSING LETTER TO BE MAILED.—In a prosecution for the crime of corruptly attempting to influence a juror in respect to his verdict in a criminal syndicalism case pending in the superior court by means of a letter sent promiscuously to residents of the county, one of which was directed to and received by a member of a jury panel drawn for service in certain criminal syndicalism cases about to be tried, if the defendant caused the letter to be mailed his guilt is not less than if he had personally mailed it.

[2] ID.—IGNORANCE OF JUROR'S EXISTENCE—OTHER FACTS CONSTITUTING GUILT—INTENT.—From the fact that the defendant in such prosecution did not know of the existence even of said member of the jury panel or that he had been drawn or summoned as a juror, it does not necessarily follow that defendant did not corruptly attempt to influence such juror, as defendant could not shield himself behind such ignorance if he had given directions to one of his agents to place the letter in question in the hands of every person drawn as a juror in syndicalism cases and the agent, in pursuance of such directions, gave a copy to such juror, or if defendant caused copies of the letter to be mailed to several thousand residents of the county in the hope and expectation of thereby reaching many jurors and with the intent of corruptly influencing them.

[3] ID.—PROMISCUOUS SENDING OF LETTERS—CORRUPT INTENT — CREATION OF FAVORABLE PUBLIC OPINION.—If the defendant in such prosecution sent out copies of the letter promiscuously, in good faith, for the sole purpose of creating public opinion in favor of the repeal of the syndicalism law, and without any intention of influencing jurors, then the mere fact that copies of the letter were by chance sent to some of the jurors, the defendant not knowing that they were such, would not establish the corrupt intent essential to constitute the crime charged.

[4] ID.—INTENT—EVIDENCE—IMPLIED FINDING OF JURY.—In such prosecution, in view of defendant's knowledge of the pendency of the syndicalism cases in court, of the discussion in the letter of the situation of one of the defendants and of his family, of the disparaging statements therein relative to witnesses who would probably testify in those cases, of the denunciation of prosecutions under the syndicalism law contained in the printed leaflets accompanying the letter, and of the fact that similar letters were sent to other counties in which syndicalism cases were pending, it could

not be said that there was not sufficient evidence to support the implied finding of the jury that the letter was sent with intent to corruptly influence the juror; and whether or not such intent was present in the act was a question for the jury under the conflicting evidence.

[5] Id. — Purpose and Intent in Sending Letter — Evidence. — In such prosecution, evidence as to the purpose and intent with which defendant sent out the copies of the letter in question was clearly admissible; but defendant's rights were not prejudiced by the erroneous refusal of the trial court to permit him to state such purpose and intent where, later in the trial, the court permitted him to state fully such purpose and intent.

[6] Id.—Elements of Crime—Erroneous Instruction.—In such prosecution, it was not error to refuse one of defendant's proposed instructions stating five elements of the crime necessary to justify a conviction where, as to the fourth element of the crime charged, the instruction was erroneous in stating that, in order to justify a conviction, it was necessary to find that, at the time the letter was sent, defendant knew that the person in question to whom the letter was sent was on the jury list and might be chosen as a juror on the trial of the specified criminal syndicalism case.

[7] Id. — Scope of Indictment — Specific Charge — Erroneous Instruction.—In such prosecution, the indictment having alleged the pendency of but one criminal syndicalism action, and charged a corrupt attempt to influence a certain designated juror in respect to his verdict to be rendered in that particular action, and not in all pending criminal syndicalism cases in which he might sit as a juror, it was prejudicial error to instruct the jury that if they found from the evidence that the designated juror "was a juror regularly summoned and drawn as such, in the superior court" on a certain specified date, and continued to be such juror until after a specified subsequent date, and if they further found from the evidence that the defendant corruptly attempted by a written communication as alleged in the indictment to influence said juror, "in respect to his verdict in, or decision of any cause or proceeding pending, or about to be brought before him as such summoned or drawn juror," then they should find the defendant guilty.

[8] Id.—Existence of Other Criminal Syndicalism Cases—Prejudicial Error — Constitutional Law.—In such prosecution, the giving of such erroneous instruction might have been regarded as harmless, under the constitutional provision forbidding the reversal of judgments on the ground of mere technical errors, if there had been no syndicalism case other than the one specified in the indictment pending at the time the letter in question was sent by defendant; but the evidence showed that three other syndicalism cases were then pending awaiting trial, and a fourth case was

being tried, and defendant testified that he knew of the pendency of these four cases, but did not know that an indictment had been found against the person specified in the indictment against defendant, though he knew that said person had been arrested.

---

(1)  20 C. J., p. 497, n. 36.   (2) 20 C. J., p. 496, n. 4 New, p. 497, n. 43.   (3) 20 C. J., p. 496, n. 30.   (4) 20 C. J., p. 498, n. 74. (5) 17 C. J., p. 337, n. 37; 20 C. J., p. 498, n. 71.   (6) 16 C. J., p. 1067, n. 91.   (7) 20 C. J., p. 498, n. 74 New.   (8) 16 C. J., p. 1103, n. 68.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge.   Reversed.

The facts are stated in the opinion of the court.

R. W. Henderson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted of the crime of corruptly attempting to influence a juror in respect to his verdict in a criminal case pending in the superior court. This appeal is from the judgment and the order denying defendant's motion for a new trial.

The indictment charges that on the —— day of March, 1923, there was pending and set for trial and undecided "an action entitled the *People of the State of California* vs. *Barney Brooks et al.*"; that the defendants therein were charged with the crime of criminal syndicalism; that the trial of said action had been set for March 26, 1923; that a regular panel of jurors had been "duly summoned and drawn," and that one of such jurors was H. D. Arnold; that defendant knew that Arnold had been so drawn and summoned and that he "would continue as said summoned and drawn juror during the trial of" said criminal action; and that defendant corruptly attempted to influence said juror "in respect to his verdict to be thereafter rendered in said action of the *People of the State of California* vs. *Barney Brooks et al.*, . . . by means of a written communication then and there had by said" defendant "with said juror H. D. Arnold." The indictment then sets forth those parts of the following writing which are herein italicized:

"March 15th, 1923.

"To the Citizens of Sacramento County:

"We wish to take only a moment of your time on a matter of importance 'to the people of this State. This matter is of great importance to all the people of California and of vital importance to all the Workers. At the present time if you will take trouble to do so, you may step into the County court house and view a very interesting case now being tried before the superior court.

"There you will find eight men being tried on a charge of having violated the Criminal Syndicalism Law. Their conviction means a prison sentence of from one to fourteen years. These men are not accused of having committed any overt act or of otherwise doing any deliberate thing which would jeopardize their liberty. However they are at the present moment almost certain of being convicted and given a long prison term without having been even accused of having committed any overt act.

"The law which makes such gross injustice possible was introduced before your state legislature by a representative who admits never having read it previous to that time. *A trio of degenerates will be on hand when the prosecution offers its evidence and these three persons will offer as testimony, some weird tales of crimes committed by themselves. These men who go continually from place to place trading for a few pieces of gold the liberty of honest workmen by claiming that while members of a certain labor organization they themselves had committed certain crimes, at the same time admitting that no punishment has ever been meted out to them for having done so. To the intelligent this should prove a fair example, of what extremities men will go to for the sake of $10.00 per day and expenses.*

*"Did you ever stop to consider that with a sometime membership of several hundred thousand members that only three persons are to be found who knew of these acts having been committed. Think again that these three are employed continually for this purpose and besides being of a very low moral type they admit having remained members of this organization to further the interests of some certain corporate interests who have at all times shown bitter enmity toward all labor organizations.*

*"There is another matter we would like to mention. In your city there is a wife, a mother, and she is waiting for*

*someone who does not come home. This woman is Mrs.*
*Barney Brooks who is alone with two very small children*
*because of a certain law which states that a man must answer*
*for the thoughts and ideas of others who may now be dead*
*and forgotten if ever they lived at all.*

*"This young man who led a good, clean life among you*
*for years made an apparent mistake but a mistake only from*
*a very narrow and selfish point of view: He wishes to im-*
*prove working conditions for his own and other peoples*
*children when they arrive at the proper age. His wife and*
*kiddies await him at home and he cannot go to them because*
*three perverted minds have contrived to turn lies into dol-*
*lars and laws are enacted which corporations can twist and*
*turn to their financial benefit. This young man is being*
*held under bonds of $2500.00 and others already convicted*
*of the same charge are out awaiting appeal under bonds of*
*$250.00 each.*

"We leave these facts for your consideration and trust
that you will investigate them. Then write to your news-
paper and responsible officials and in the name of fairness
and justice demand the repeal of this extremely vicious and
inhuman piece of legislation.

"Yours for fair play and justice to all,

"California Branch of the

"General Defense Committee."

March 2, 1923, an indictment was duly filed charging
Barney Brooks, Joe Wagner, and R. C. Russell with the
crime of criminal syndicalism. March 6th the defendants
entered pleas of not guilty. The case was set to be tried
on the 26th of the same month. The record does not show
on what day the order was made setting the case for trial, or
whether it was before or after the mailing of the foregoing
communication. March 22d Brooks withdrew his plea of not
guilty and entered a plea of guilty. He was thereupon
placed on probation. The trial of the other defendants was
commenced March 26th. During the month of March three
other actions were pending in which the defendants therein
were charged with criminal syndicalism. The trial dates of
these cases were set and successively continued as follows:
*People* v. *Vargo et al.*, November 2, 1922; January 2, 1923;
January 15th, February 21st, March 5th, March 6th, March
26th; *People* v. *Flanagan et al.*, February 5, 1923; February
6th, March 13th, April 27th; *People* v. *Stewart et al.*, Febru-

ary 5, 1923; February 6th, March 19th, May 5th. In addition to the foregoing cases, there was pending another criminal syndicalism case against eight defendants. The trial of that action was commenced March 5, 1923, and was still in progress as late as March 18th.

March 2, 1923, a regular panel of jurors was drawn for service commencing the twelfth day of March. Arnold's name was one of those so drawn. From this panel the jury was selected to try Wagner and Russell. Arnold was called into the jury-box, examined as to his qualifications, and excused from service in that case.

The legislature was in session at the time the alleged communication was mailed. A movement was then in progress to bring about the repeal of the Criminal Syndicalism Law (Stats. 1919, p. 281). The defendant contended at the trial and now urges that the communication was not sent for the purpose of influencing any juror but that it was merely a part of a general agitation to influence public opinion in favor of the repeal of the law. Appellant says that "the evidence in this case is practically without conflict." This may be conceded, but conflicting inferences may be rationally drawn from the evidence as to the purpose or intent with which the communication was sent.

The general defense committee of the I. W. W., with headquarters in Chicago, had charge of the defense of persons arrested under criminal syndicalism statutes. The defendant was secretary of the California branch of the committee, with offices in San Francisco. He was in charge of the defense of criminal syndicalism cases in this state. The alleged communication was mailed in San Francisco March 17, 1923, and the envelope containing it was addressed to H. D. Arnold, Sacramento. The defendant testified that it was a multigraph letter, and that he caused twenty thousand copies thereof to be mailed to residents of Sacramento County between the 5th and the 25th of March, 1923; that he knew there were several criminal syndicalism cases then pending in that county; that a part of his work was "to keep a record of all cases pending"; that he knew Brooks, Wagner, and Russell were "in jail in Sacramento at that time, and twelve other men throughout the state, which were not listed as cases, they were individuals, they were in jail—no indictment returned, to my knowledge—no record of it in our office at that time"; that he had no information that a jury had

been drawn in Sacramento County; that he had never heard of the name H. D. Arnold or of any of the four other jurors who, the evidence shows, received copies of the letter; that the thought that any of the letters might reach jurors or prospective jurors never crossed his mind, was never thought of or mentioned; that similar letters were sent to residents of nine counties prior to his arrest; that twenty-five thousand were sent to Lassen County; that his intention in sending copies of the letter to residents of Sacramento County "was to make the public acquainted with these facts, to create public opinion which we believed would cause the repeal of this act, and to raise funds to defend these cases"; that there were two Sacramento County telephone directories in his office from which names and addresses of residents of that county were taken in mailing out literature. There were inclosed in the envelopes containing these letters two printed leaflets attacking the syndicalism law and prosecutions had thereunder. The defendant's office was searched at the time of his arrest and packages of letters were found therein addressed to the residents of several counties, including Lassen and Siskiyou. The evidence shows that there was a criminal syndicalism case pending in each of those counties at that time.

Appellant says that "the defendant caused to be mailed a large quantity of printed matter relating to the injustice of prosecutions under the Criminal Syndicalism Act and to the repeal of that act; that one of these letters was addressed to H. D. Arnold, and referred to the misfortune of one accused of this crime and whose case was pending in the same court in which H. D. Arnold had been summoned as a juror. The proof is utterly insufficient to show either that Mr. Connors had mailed the letter to Arnold, or, that if he had done so his act was corrupt." [1] If the defendant caused the letter to be mailed, his guilt is not less than if he had personally mailed it. [2] It may be conceded that the evidence does not show that the defendant actually knew of the existence even of such a person as Arnold or that he had been drawn or summoned as a juror. It does not necessarily follow, however, that the defendant did not corruptly attempt to influence such juror. Had defendant given directions to one of his agents to place a copy of the letter in the hands of every person drawn as a juror in syndicalism cases and the agent, in pursuance of such directions, had given a

copy to Arnold, it would not be contended that the defendant could shield himself behind his ignorance of the fact that Arnold was one of such jurors. Neither is such a defense available to the defendant if he caused copies of the letter to be mailed to twenty thousand residents of Sacramento County in the hope and expectation of thereby reaching many jurors and with the intent of corruptly influencing them. It is not a question of transfer of intent from one objective to another, as in *People* v. *Wells,* 145 Cal. 138 [78 Pac. 470]; *People* v. *Suesser,* 142 Cal. 354 [75 Pac. 1093]; *People* v. *Ramirez,* 64 Cal. App. 358 [221 Pac. 960], but the application of an intent manifested toward a class of persons to every individual of that class. "A man out of general malignity may fire on a crowd or may displace a rail on a railway; and then, if any life be lost, he is responsible for murder, though he may have had no intention of taking any particular life. . . . When there is a general intent to do evil . . . of which evil the wrong actually done may be looked upon as a probable incident, then the party having such general intent is to be regarded as having intended the particular wrong. A man using a deadly weapon in a crowd, intending to kill, must be regarded as intending to kill all within the range of the weapon." (Wharton's Criminal Law, 11th ed., sec. 157.) If, in such a case, the person using the deadly weapon be charged with the intent to kill a particular person in the crowd, it would be no defense to prove that the defendant did not know of the existence of such person. [3] On the other hand, if the defendant herein sent out copies of the letter promiscuously, in good faith, for the sole purpose of creating public opinion in favor of the repeal of the syndicalism law, and without any intention of influencing jurors, then the mere fact that copies of the letter were by chance sent to some of the jurors, the defendant not knowing that they were jurors, would not establish the corrupt intent essential to constitute the crime charged. [4] In view of defendant's knowledge of the pendency of the syndicalism cases in court, of the discussion in the letter of the situation of one of the defendants and of his family, of the disparaging statements therein relative to witnesses who would probably testify in those cases, of the denunciation of prosecutions under the syndicalism law contained in the printed leaflets accompanying the letter, and of the fact that similar letters were sent to other counties in

which syndicalism cases were pending, it cannot be said that there is not sufficient evidence to support the implied finding of the jury that the letter was sent with intent to corruptly influence the juror. Whether or not such intent was present in the act was a question for the jury under the conflicting evidence.

[5] Complaint is made of the court's refusal to permit the defendant to state the purpose and intent with which he sent out the copies of the letter and leaflets. Such evidence was clearly admissible and, later in the trial, the court permitted the defendant to state fully such purpose and intent. Under those circumstances, the defendant's rights were not prejudiced by the erroneous ruling first made.

[6] Appellant contends that it was error to refuse a proposed instruction stating five elements of the crime necessary to justify a conviction. The instruction appears to be faultless except as to the fourth element of the crime charged. That part of the instruction was erroneous in stating that, in order to justify a conviction, it was necessary to find that, at the time the letter was sent, the defendant "knew that said H. D. Arnold was on the said jury list and might be chosen as a juror on the trial of the said criminal action against Barney Brooks." As hereinbefore stated, if the defendant sent twenty thousand copies of the letter in an attempt to corruptly influence all jurors into whose hands they probably would be delivered, in respect to their verdict to be rendered in the Brooks case, and a copy was delivered to Arnold, the fact that the defendant did not know that Arnold had been summoned as a juror was immaterial, because the general intent to corrupt the jurors on the panel included the particular intent to corrupt Arnold. [7] The court instructed the jury as follows: "If you find from the evidence that H. D. Arnold was a juror regularly summoned and drawn as such, in the superior court of the State of California, on the 12th day of March, 1923, and continued to be such juror until after the 20th day of March, 1923, and if you further find from the evidence that the defendant Tom Connors corruptly attempted by a written communication as alleged in the indictment to influence said juror H. D. Arnold, in respect to his verdict in, or decision of any cause or proceeding pending, or about to be brought before him as such summoned or drawn juror, then you should find the defendant guilty."

Appellant contends that this instruction is prejudicially erroneous. The contention must be sustained. The indictment alleges the pendency of but one action, that of *People* v. *Brooks et al.,* and charges a corrupt attempt to influence the juror Arnold in respect to his verdict to be rendered in that particular action. The indictment would have been fatally defective if it had failed to state the action, or class of actions, in respect to which the alleged attempt to influence the juror was made. It may be conceded that it would have been sufficient to allege that the corrupt attempt was made to influence the juror to vote not guilty in all pending criminal syndicalism cases in which he might sit as a juror, without naming any particular case. (*People* v. *Markham,* 64 Cal. 157 [49 Am. Rep. 700, 30 Pac. 620].) The indictment, however, was not framed upon that theory. The fact that the letter would probably tend as strongly to influence the juror in respect to his verdict in other pending syndicalism cases as in the Brooks case is immaterial. It would probably have as much tendency to influence the other jurors who received copies thereof as Arnold, but no one would contend that under the charge stated in the indictment the defendant could be convicted of attempting to influence such other jurors. The vice of the instruction is that it authorized the jury to convict the defendant of a crime with which he was not charged. In *State* v. *Moore,* 178 Mo. 348 [77 S. W. 522], the information charged the defendant with a felonious assault upon one Nancy M. Lewis. It was held error to instruct the jury to find the defendant guilty ''if he unlawfully committed an assault upon Nancy M. Lewis, Troy Lewis or Roy Lewis, or any of them.'' Presumably the assault had been made upon the three persons named. The instruction in that case, of course, was manifestly erroneous, but it did not differ in principle from the one here in question. Every person who enters any building ''with intent to commit grand or petit larceny or any felony is guilty of burglary.'' (Pen. Code, sec. 459.) In *People* v. *Mulkey,* 65 Cal. 501 [4 Pac. 507], it is said: ''The defendant was charged by information with the crime of feloniously entering a certain dwelling-house with intent to commit larceny. The court below instructed the jury that if they believed from the evidence that the defendant entered the house with the intent to commit grand or petit larceny or *any felony,* they should find him guilty.

This instruction was clearly erroneous. There is nothing better settled than that the crime charged must be proved before a conviction can be had.''

[8] If there had been no other syndicalism case pending at the time the letter was sent the error in the instruction might be regarded as harmless, under the constitutional provision forbidding the reversal of judgments on the ground of mere technical errors (Const., art. VI, sec. 4½), because the letter would have no tendency to influence a juror in other classes of cases. But, as stated, three other syndicalism cases were then pending awaiting trial, and a fourth case was being tried, and the defendant testified that he knew of the pendency of these four cases, but did not know that an indictment had been found against Brooks, though he knew Brooks had been arrested. The trials of syndicalism cases often run through several weeks. The jury may have found that, at the time the letter was sent, the defendant reasonably believed that these cases would be tried in the order in which the indictments therein were found and that consequently the panel of which Arnold was a member would be discharged before the Brooks case was reached and that, therefore, the letter was sent with the purpose of influencing Arnold's verdict in any of the three cases awaiting trial in which he might serve, rather than in the Brooks case. If the jury had expressly found the defendant guilty of attempting to influence Arnold in respect to his verdict to be rendered in the Vargo, Flanagan, or Stewart case, it would not be contended that the verdict could be upheld, because the defendant was not charged with attempting to influence the verdict to be rendered in any of those cases. It is equally clear that the verdict returned cannot stand, because, under the instruction given, it may have been based upon a finding by the jury that the defendant attempted to influence Arnold's verdict to be rendered in one of the three cases last mentioned and not in the case alleged in the indictment.

The judgment and the order are reversed.

Hart, J., and Plummer, J., concurred.