[Crim. No. 882.   Third Appellate District.—April 14, 1926.]

## THE PEOPLE, Respondent, v. TOM CONNORS, Appellant.

[1] CRIMINAL LAW — PLEADING — WRITTEN INSTRUMENT CONSTITUTING GRAVAMEN OF CRIME—DEGREE OF PROOF REQUIRED.—Where an instrument in writing constitutes the gravamen of a cause of action or an essential element of the body of a crime, or is alleged to have been the specific means by which a crime has been committed, such instrument must be proved substantially, or, in many cases, precisely as it is pleaded.

[2] ID.—ATTEMPT TO CORRUPTLY INFLUENCE JUROR—MAILING OF CIRCULAR LETTER—RECEIPT BY JUROR—PLEADING—EVIDENCE.—In a prosecution for the crime of attempting corruptly to influence a juror in respect to his verdict in a criminal syndicalism case pending in the superior court by means of a circular letter sent promiscuously to residents of the county, one of which was directed to and received by a member of a jury panel drawn for service in certain criminal syndicalism cases about to be tried, the fact of the receipt of the letter or a copy thereof by the juror must be proved to establish the fact of the commission of the crime charged and proved by evidence which would justify the conviction, beyond a reasonable doubt, that the very letter pleaded was actually received by the juror; and such fact may be proved as well by circumstantial as by direct evidence, it being for the jury to determine, from all the facts and circumstances before them bearing upon the charge alleged in the indictment, whether the juror in question received the identical letter pleaded in the indictment.

[3] ID.—TRIAL JUDGE AS WITNESS—COMPETENCY—DISCRETION.—It is the generally accepted rule that a judge is not a competent witness in a case being tried before him; and although section 1883 of the Code of Civil Procedure in effect commits the question whether a judge may so testify to the discretion of the court or the judge himself, it will be deemed an abuse of the discretion so vested in the court or judge if the latter's testimony discloses facts without the proof of which the issue such testimony is designed to support cannot be sustained.

[4] ID.—NATURE OF TESTIMONY—EVIDENCE NOT CONTRIBUTING TO VERDICT—ABSENCE OF MISCARRIAGE OF JUSTICE.—In this prosecution for attempting corruptly to influence a juror in a pending prosecution for a violation of the Criminal Syndicalism Act, the fact that the trial judge voluntarily offered to testify, thus affording

1.   See 14 Cal. Jur. 103.
3.   See 28 R. C. L. 468.

some ground for the formation by the jury of the impression that he was throwing the force of his influence, as the presiding judge, against the accused and thereby indicating that he was of the conviction that defendant was guilty of the crime charged, did not result in a miscarriage of justice under section 4½ of article VI of the constitution, where such testimony was of trifling importance, being intended merely to prove by means of secondary evidence a lost document, similar to the one set forth in the indictment, and it cannot be said that the fact that the judge did voluntarily become a witness and testify contributed to the result arrived at by the jury.

[5] ID.—TRIAL—OBJECTIONS BY COUNSEL—REMARKS BY TRIAL COURT—ABSENCE OF MISCONDUCT.—The trial court has the right to compel an attorney to make his objection before arguing a point intended to be raised, and, in this prosecution for attempting corruptly to influence a juror in a pending prosecution for a violation of the Criminal Syndicalism Act, a remark of the trial judge addressed to defendant's counsel to "Make your objection, don't take up so much time in statements," did not constitute misconduct prejudicial to the rights of defendant, where the attorney was not precluded from making his objection, but did make it after the court interrupted him.

[6] ID.—IMPROPER REMARKS BY DISTRICT ATTORNEY—ABSENCE OF. MISCONDUCT.—In such prosecution, where the district attorney in presenting the case stated that counsel for defendant had admitted on a former appeal to the appellate court that the document he offered was a true and correct copy, to which defendant's counsel stated that the district attorney's statement "was made for the deliberate purpose of prejudicing this case before the jury," the district attorney's reply that "I want to characterize that statement as absolutely malicious and mendacious," while improper, was not prejudicial to defendant, where it was shown by the evidence that defendant had caused similar documents to be mailed and distributed.

[7] ID. — ARGUMENT OF DISTRICT ATTORNEY — CHARACTERIZATION OF I. W. W. AS OUTLAW ORGANIZATION—ABSENCE OF PREJUDICE.—In such prosecution, the characterization by the district attorney of the I. W. W. as an "outlaw organization" was not prejudicial to defendant, where it was a matter of common knowledge, known to every juror sitting in the case, that many members of the I. W. W., in prior trials, had been convicted of the crime of criminal syndicalism, the gist of said crime being in the unlawful methods resorted to for the carrying out of the general political principles of said organization; and while it is not necessarily to be assumed as true that, from the knowledge of the fact of such convictions, the jurors were of the unqualified opinion that the organization was *per se* an "outlaw organization" or abstractly

is justly to be called such an organization, still they may be assumed to have known from their knowledge of such convictions that the district attorney's characterization of the organization was based upon facts with which the jurors were perfectly familiar and that from those facts the conclusion expressed by the district attorney as to the general character of the organization might reasonably be deduced.

[8] Id. — Scope of Argument — Analysis and Interpretation of Facts in Evidence—Motive and Intent.—While it is true that an attorney, in his argument to the jury, must be certain not to import any opinion or suggestion into the case which is not fairly and reasonably within the legitimate bounds of the record as made, yet it is equally true that in the exercise of this right of argument an attorney may give his own analysis of and interpretation to any act or fact of which there is substantial evidence in the case and assign to such act or fact any motive or intent which is consistent with the nature thereof and the circumstances under or by which it was produced.

[9] Id.—Criminal Syndicalism—Platform and Policies of I. W. W. —Evidence.—In a prosecution for attempting corruptly to influence a juror in a criminal syndicalism case pending in the superior court by means of a circular letter sent promiscuously by defendant to residents of the county, one of which was directed to and received by a member of the jury panel drawn for service in certain criminal syndicalism cases about to be tried, the preamble of the political platform and other literature of the I. W. W. organization, offered and received in evidence not only to prove the character of said organization but upon the theory that they would further tend to show that defendant, being in full accord with all that is set forth in said preamble and other literature, was of the view that the defendants in such cases were being persecuted for having exercised their constitutional right to stand for and advocate a drastic change in political and industrial control in our country and that the circulation of the letter mentioned in the indictment and other literature in the county was to influence a verdict of acquittal in those cases, were properly admitted.

(1) 31 **C. J.**, p. 850, n. 67, p. 852, n. 11.    (2) 20 **C. J.**, p. 498, n. 74 New.    (3) 40 **Cyc.**, p. 2234, n. 87, p. 2235, n. 89.    (4) 17 **C. J.**, p. 368, n. 5.    (5) 16 **C. J.**, p. 829, n. 34; 17 **C. J.**, p. 295, n. 63, 64. (6) 17 **C. J.**, p. 297, n. 20, p. 299, n. 24.    (7) 17 **C. J.**, p. 298, n. 21, p. 299, n. 25.    (8) 16 **C. J.**, p. 896, n. 85, p. 897, n. 86, 87.    (9) 20 **C. J.**, p. 498, n. 71.

8.   See 8 **Cal. Jur.** 621.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. W. Henderson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged by indictment found and returned by the grand jury of Sacramento County with the crime of attempting corruptly to influence one H. D. Arnold, a trial juror, in the determination of his verdict in a specifically named criminal case then pending in the superior court of said county. Upon his trial for said offense he was convicted, and he brings his case to this court by an appeal from the judgment of conviction and the order denying him a new trial.

The present is the second trial of the defendant upon the charge preferred against him in the indictment. He was convicted by the jury of the offense charged by the indictment, but the judgment and the order denying him a new trial were reversed because of the giving of an instruction which this court held involved an erroneous and a prejudicial statement of the rule of law thereby sought to be declared. (*People* v. *Connors,* 70 Cal. App. 315 [233 Pac. 362].) The opinion disposing of said appeal in the case sets forth in substance the following part of the indictment:

"The indictment charges that on the —— day of March, 1923, there was pending and set for trial and undecided 'an action entitled the *People of the State of California* vs. *Barney Brooks et al.*'; that the defendants therein were charged with the crime of criminal syndicalism; that the trial of said action had been set for March 26, 1923; that a regular panel of jurors had been 'duly summoned and drawn' and that one of such jurors was H. D. Arnold; that defendant knew that Arnold had been so drawn and summoned and that he 'would continue as said summoned and drawn juror during the trial of' said criminal action; and that defendant corruptly attempted to influence said juror 'in respect to his verdict to be thereafter rendered in said

action of the *People of the State of California* vs. *Barney Brooks et al.,* . . . by means of a written communication then and there had by said' defendant 'with said juror H. D. Arnold.' ''

The written communication in its entirety follows in said opinion the above excerpt, but, for the purposes of the present opinion, it will be sufficient to present herein so much of the communication only as is set forth in the indictment, as follows:

''The law which makes such gross injustice possible was introduced before your state legislature by a representative who admits never having read it previous to that time. A trio of degenerates will be on hand when the prosecution offers its evidence and these three persons will offer as testimony, some weird tales of crimes committed by themselves. These men who go continually from place to place trading for a few pieces of gold the liberty of honest workmen by claiming that while members of a certain labor organization they themselves had committed certain crimes, at the same time admitting that no punishment has ever been meted out to them for having done so. To the intelligent this should prove a fair example, of what extremities men will go to for the sake of $10.00 per day and expenses.

''Did you ever stop to consider that with a sometime membership of several hundred thousand members that only three persons are to be found who knew of these acts having been committed. Think again that these three are employed continually for this purpose and besides being of a very low moral type they admit having remained members of this organization to further the interests of some certain corporate interests who have at all times shown bitter enmity toward all labor organizations.

''There is another matter we would like to mention. In your city there is a wife, a mother, and she is waiting for someone who does not come home. This woman is Mrs. Barney Brooks who is alone with two very small children because of a certain law which states that a man must answer for the thoughts and ideas of others who may now be dead and forgotten if ever they lived at all.

''This young man who led a good, clean life among you for years made an apparent mistake but a mistake only from a very narrow and selfish point of view: He wishes to im-

prove working conditions for his own and other people's children when they arrive at the proper age. His wife and kiddies await him at home and he cannot go to them because three perverted minds have contrived to turn lies into dollars and laws are enacted which corporations can twist and turn to their financial benefit. This young man is being held under bonds of $2500.00 and others already convicted of the same charge are out awaiting appeal under bonds of $250.00 each.

"We leave these facts for your consideration and trust that you will investigate them. Then write to your newspaper and responsible officials and in the name of fairness and justice demand the repeal of this extremely vicious and inhuman piece of legislation.

"Yours for fair play and justice to all."

Upon proceeding with the trial with which we are now concerned it transpired that the written document upon which this prosecution is founded, and of which in part the above as taken from the indictment is a copy, was missing and could not be found by the prosecuting officers. Other written documents of a like nature, which, as was true of the letter or document referred to in the indictment, were introduced in evidence at the first trial of the accused and marked as exhibits in the case, were also missing and consequently were not themselves available for use at the trial from which the present appeals arise. Upon laying the requisite foundation, the People introduced secondary evidence of the contents of said missing writings or documents.

At the former trial the defendant testified in his own behalf, but was not a witness in the second trial—that is, the trial the record of which, in certain designated particulars, we are now called upon to review upon his appeal from the judgment of conviction and the order disallowing his motion for a new trial. The People, however, introduced in evidence the testimony given by him at the former trial.

The same witnesses, with the exception of one (Carl E. Scheunert), who testified at the first trial, testified at the trial eventuating in the present appeals, and the oral testimony given at the second or the last-mentioned trial was substantially the same as that given at the first trial. Scheunert, above referred to, was one of the panel of jurors summoned early in March, 1922, to appear for jury duty

in the superior court of Sacramento County. Several other jurors of the same panel other than Juror Arnold testified at the second trial, as they did at the former trial, that they received through the United States mail a copy of the communication set forth in the indictment. Counsel for the defendant, however, frankly makes the following statement in his opening brief: ''As this court has had occasion to review the evidence in the case upon the former appeal, it will not be necessary to present it in detail in this brief. Except for the fact that the foundation for secondary evidence had to be laid in connection with practically every document, the statement contained in the appellant's opening brief in the former appeal will be found fairly accurate.''

The statement of the general facts in the former opinion herein is not only in accord with the evidence as disclosed by the record on the former appeal, but is in full harmony with the evidence as revealed by the record on this appeal and the statement of the facts in the opening brief of appellant filed in support of the former appeal. We, therefore, adopt as a part of this opinion the statement by the presiding justice in the opinion disposing of the former appeal of the facts disclosed by the evidence introduced by both the People and the defendant, as follows:

''March 2, 1923, an indictment was duly filed charging Barney Brooks, Joe Wagner and R. C. Russell with the crime of criminal syndicalism. March 6th the defendants entered pleas of not guilty. The case was set to be tried on the 26th of the same month. The record does not show on what day the order was made setting the case for trial, or whether it was before or after the mailing of the foregoing communication. March 22d Brooks withdrew his plea of not guilty and entered a plea of guilty. He was thereupon placed on probation. The trial of the other defendants was commenced March 26th. During the month of March three other actions were pending in which the defendants therein were charged with criminal syndicalism. The trial dates of these cases were set and successively continued as follows: *People* v. *Vargo et al.*, November 2, 1922; January 2, 1923; January 15th, February 21st, March 5th, March 6th, March 26th; *People* v. *Flanagan et al.*, February 5, 1923; February 6th, March 13th, April

27th; *People* v. *Stewart et al.,* February 5, 1923; February 6th, March 19th, May 15th. In addition to the foregoing cases, there was pending another criminal syndicalism case against eight defendants. The trial of the action was commenced March 5, 1923, and was still in progress as late as March 18th.

"March 2, 1923, a regular panel of jurors was drawn for service commencing the 12th day of March. Arnold's name was one of those so drawn. From this panel the jury was selected to try Wagner and Russell. Arnold was called in the jury box, examined as to his qualifications and excused from service in that case.

"The legislature was in session at the time the alleged communication was mailed. A movement was then in progress to bring about the repeal of the Criminal Syndicalism Law. The defendant contended at the trial and now urges that the communication was not sent for the purpose of influencing any juror, but that it was merely a part of a general agitation to influence public opinion in favor of the repeal of the law. Appellant says that 'the evidence in this case is practically without conflict.' This may be conceded, but conflicting inferences may be rationally drawn from the evidence as to the purpose or intent with which the communication was sent.

"The general defense committee of the I. W. W., with headquarters in Chicago, had charge of the defense of persons arrested under criminal syndicalism statutes. The defendant was secretary of the California branch of the committee, with offices in San Francisco. He was in charge of the defense of criminal syndicalism cases in this state. The alleged communication was mailed in San Francisco March 17, 1923, and the envelope containing it was addressed to H. D. Arnold, Sacramento. The defendant testified that it was a multigraph letter, and that he caused twenty thousand copies thereof to be mailed to residents of Sacramento county between the 5th and the 25th of March, 1923; that he knew there were several criminal syndicalism cases then pending in that county; that a part of his work was 'to keep a record of all cases pending'; that he knew Brooks, Wagner and Russell were 'in jail in Sacramento at that time, and twelve other men throughout the state, which were not listed as cases, they were in-

dividuals, they were in jail—no indictment returned to my knowledge—no record of it in our office at that time'; that he had no information that a jury had been drawn in Sacramento county; that he had never heard of the name H. D. Arnold or of any of the four other jurors who, the evidence shows, received copies of the letter; that the thought that any of the letters might reach jurors or prospective jurors never crossed his mind, was never thought of or mentioned; that similar letters were sent to residents of nine counties prior to his arrest; that twenty-five thousand were sent to Lassen county; that his intention in sending copies of the letter to residents of Sacramento county 'was to. make the public acquainted with these facts, to create public opinion which we believed would cause the repeal of this act, and to raise funds to defend these cases'; that there were two Sacramento county telephone directories in his office from which names and addresses of residents of that county were taken in mailing out literature. There were inclosed in the envelopes containing these letters two printed leaflets attacking the Syndicalism Law and prosecutions had thereunder. The defendant's office was searched at the time of his arrest and packages of letters were found therein addressed to the residents of several counties, including Lassen and Siskiyou. The evidence shows that there was a criminal syndicalism case pending in each of those counties at that time."

Counsel for the defendant admits that the foundation for the introduction of secondary evidence of the documentary evidence, including the letter upon which the indictment is founded, was sufficiently laid. Among the copies of the documents received into the record of the case at the former trial which were introduced in the trial involved in the present appeals was that of said letter. It is claimed, though, that the evidence introduced herein is insufficient to show that juror Arnold received the identical letter pleaded or set forth in the indictment. This presents the most important of the several points upon which the defendant relies here for a reversal. The several other assignments involve the claim that the judge of the trial court was in several instances guilty of misconduct in the trial of the case which prejudiced the rights of the accused in the trial of the issues; that the district attorney, in his

presentation of the case to the jury, was, in a number of instances during the progress of the trial, guilty of misconduct of a character calculated to deny to the accused a fair and impartial trial; that there was prejudicial error in the action of the court in the giving and the refusal to allow certain instructions.

1. The witness, H. D. Arnold, who, as seen, was summoned as a juror early in March, 1923, and by whom the communication or address set forth in the indictment was received prior to the date fixed for the trial of the criminal syndicalism case against Barney Brooks and others, was shown a copy of the said communication or address, and, upon his examination thereof, was asked by the district attorney whether or not he (the witness) "recognized it as being a copy of the letter you received at that time," referring to the date of the witness' receipt of the communication through the mail. To that question Arnold replied: "I did receive a letter at that time addressed, 'To the Citizens of Sacramento County, of this character,'" referring to the copy of the communication which he had just inspected or read. The witness was not further questioned by the district attorney along that line, and the answer so returned was the only direct testimony presented to the jury tending to show that such a letter or communication as is set forth in the indictment was received by said Arnold at the time mentioned by him and alleged in the accusatory pleading.

[1] It is the settled law that where an instrument in writing constitutes the gravamen of a cause of action or an essential element of the body of a crime or is alleged to have been the specific means by which a crime has been committed, such instrument must be proved substantially, or, perhaps, in many cases, precisely as it is pleaded. But there is no question here that the letter pleaded in the indictment which is the groundwork of the crime therein charged was the letter or a copy thereof which was sent out by defendant or under his immediate direction to many thousands of the citizens of Sacramento County at the time mentioned in the indictment. That fact was admitted by the defendant at the trial and is not, of course, controverted on these appeals. [2] The only question at the trial was whether the evidence was such as to justify the jury in concluding therefrom whether the letter received by H. D.

Arnold, summoned to serve as a juror in the superior court of Sacramento County shortly prior to the trial of the criminal syndicalism cases referred to above, was a copy of the letter set forth in the indictment. The question here is whether we can say, as a matter of law, that such finding is not supported. Of course, the fact of the receipt of the letter or a copy thereof by Arnold at the time mentioned had to be proved to establish the fact of the commission of the crime charged and proved by evidence which would justify the conviction, beyond a reasonable doubt, that the very letter pleaded was actually received by Arnold at the. time mentioned. But we can conceive of no just reason for holding that such fact may not be proved as well by circumstantial as by direct evidence. It may first be observed that it was for the jury to determine, from all the facts and circumstances before them bearing upon the charge alleged in the indictment, the meaning intended to be conveyed by Arnold when, upon examining an admitted copy of the letter set out in part in the indictment, he stated, referring to said copy, "I did receive a letter of this character." These facts and circumstances are: That, as a necessary part of the trial, the clerk of the court, upon the swearing of the jury selected to try the case, read to the jury the indictment, which consisted in part of the letter in question or a copy thereof, and stated the defendant's previously entered plea thereto (Pen. Code, sec. 1093, subd. 1), and thus the letter and its contents were before them in an unquestionable legal form; that defendant admitted that, prior to the date fixed for the trial of the criminal syndicalism cases pending in the superior court of Sacramento County, many thousands of the copies of the letter set out in the indictment were, by his authority and under his direction, addressed and sent through the mails to as many citizens of Sacramento County; that, among the citizens of said county to whom copies of said letter thus were sent, were several citizens, other than said Arnold, who had also been summoned early in March, 1922, on the jury panel for said superior court, and who received said letter or a copy thereof a short time prior to the date fixed for the trial of the criminal syndicalism cases above referred to; that said H. D. Arnold, at the time that he received a letter of the "character" of the one set out in

the indictment, was still a member of said jury panel, from which it was the purpose and intention to select a jury to try said syndicalism cases. Interpreting the statement of Arnold that he received a letter or communication at the time mentioned in the indictment of the "character" of the one shown to and inspected by him when testifying by the light of the foregoing facts and circumstances and the further fact that the letter or communication shown to and examined by him was a copy of the letter or communication set forth in the indictment, the conclusion is fair and reasonable that what he intended to say when he made the statement referred to was that he had received at the time mentioned a letter or communication which in its language and subject matter was the same as the copy submitted to his examination when on the witness-stand and giving his testimony, and justly the jury could have so viewed it. Indeed, it is to be assumed, from the fact that the verdict was that the accused was guilty of the crime as charged, that the jury did so construe the testimony of Arnold in that particular. Certainly, it could not reasonably be expected that the average person could, from the examination alone of a copy of a lengthy written document which, as was true of the witness in this case, had not for a long period of time been in his possession or examined or read by him, readily or at all recall the precise language of such document. Under such circumstances, the most that could be expected from the average witness testifying to the contents of the original document would be to say, if it was true, and as the witness in this case in effect did say, that the original document was of the character, in language and substance or subject matter, of the purported copy. It is with readiness to be conceded that the conviction of a person of a public offense should not be permitted to rest alone upon such an identification of a document constituting an essential part of the crime charged, the proof of which was, consequently, indispensable to the establishment of the crime against him, yet, where, as has been shown to be true in this case, there are proved facts and circumstances extrinsic to or independent of such testimony which strongly support the probative import and purpose thereof, then the case presented upon the evidence is wholly for the jury and not for this court to decide. In this connection it may be sug-

gested as a matter worthy of note that defendant's counsel did not cross-examine Arnold with the view of testing his memory relative to the contents of the original document or whether he could specifically point out or state definitely, from his examination of the copy, the language or any part thereof contained in the original.

In ten different instances during the progress of the trial and presented here under as many different and distinct assignments, counsel for defendant charged that the court, in certain of these instances and the district attorney in others, were guilty of misconduct which prejudicially affected the rights of the accused at the trial. Some of these assignments grow out of those exchanges of sharp words which too frequently occur between attorneys representing adverse interests in the trial of causes in courts of justice and sometimes, be it deprecatingly said, between court and counsel, which always have the effect of derogating more or less from the dignity with which proceedings in judicial tribunals should uniformly be managed. The first of these assignments to which attention should be given is the outgrowth of the fact that the trial judge himself voluntarily became a witness for the People and testified to a material circumstance. As pointed out above, several citizens of Sacramento County other than Arnold who were summoned on the jury panel for the superior court of said county at the time Arnold was so summoned received copies of the letter or communication described in the indictment. As bearing upon the question of the motive and intent with which said documents were mailed to many residents of the county of Sacramento, three persons were called as witnesses and gave testimony supporting the People's theory of the motive for circulating the literature described in the indictment. Among the parties so called and testified was juror T. J. Bennetts. He testified that he received such a letter as is referred to in the indictment between the time at which the order was made fixing the date for the trial of Barney Brooks et al., and the date so fixed, and that he delivered the envelope containing the document to the judge presiding at the former as well as at the present trial of the defendant. This was one of the missing documents proof of which the district attorney was required to make by means of secondary evidence, and, to trace and so identify the docu-

ment, the prosecution deemed it necessary (and obviously for that purpose it was necessary) to show what disposition the judge made of it. Upon the disclosure of this situation the judge voluntarily stated: "I will be sworn, if the clerk will swear me." Thereupon the judge was sworn by the clerk, and, over repeated objections by counsel for defendant, testified that, during the trial of Brooks et al., Bennetts handed him (the judge) the envelope referred to and that he (the judge) delivered it to Mr. Cowan, an assistant district attorney, then in personal charge of the prosecution of the case against said Brooks et al. After Judge Busick so testified and before proceeding to the cross-examination counsel for defendant moved to dismiss the action on the ground "of a mistrial—on the ground that we are not having a trial before a judge who stands indifferent as between the people and the defendant," the motion being denied.

Section 1883 of the Code of Civil Procedure provides: "The judge himself, or any juror, may be called as a witness by either party; but in such case it is in the discretion of the court or judge to order the trial to be postponed or suspended, and to take place before another judge or jury."

Counsel for defendant vigorously contends that neither a judge nor a juror is competent as witness to give testimony in a cause being tried before and by him, and that, notwithstanding the foregoing section of our Code of Civil Procedure, the trial judge in the present instance was guilty of a flagrant violation of the rights of the accused by taking the witness-stand and giving testimony for the People, and that by so doing wrongfully prejudiced the case of the defendant in the minds of the jury. In other words, the position of counsel is that the act of the trial judge, in testifying for the People in the case, was error *per se* and worked serious detriment to the rights of the accused. Necessarily, this contention assumes the hypothesis that it is not within the constitutional power or province of the legislature to declare a judge or juror to be a competent witness and to give testimony in a case being tried before him. But whether said section, in at least impliedly giving a judge the right to testify as a witness to a material fact in a case over which he is the judge presiding, is or is not out of plumb with any provision of the constitution or, when given practical application, will be deemed to deny to the

party against whom he testified the fair and impartial trial
guaranteed by the constitution to all litigants in civil ac-
tions and all defendants in criminal prosecutions, the situa-
tion presented here does not require us to consider. One
suggestion of uncertain force, however, may be made in
this connection, and that is that, conceding that the legisla-
ture has the constitutional right to authorize a trial judge
to preside over the trial of a cause and at the same time
testify as a witness in the case, the practice is not to be
commended and should never be resorted to except in cases·
where the circumstances imperatively require it, and not
even in such a case in public prosecutions where the judge's
testimony directly · bears upon or involves a fact or facts
without the proof of which a conviction cannot be had.
Some of the cases and other authorities cited by counsel
condemn the practice in any case under any circumstances.
Some of these authorities hold that the judge is *per se* in-
competent to testify as a witness in a case pending or being
tried before him. Others hold that, where the matter to
which the judge is asked to testify unexpectedly arises dur-
ing the progress of the trial—a situation as to which, in
the nature of the case, the necessity of the judge's testimony
could not reasonably have been anticipated before the occa-
sion calling for it arose—and the testimony was not of that
character that, without it, an important and necessary issue
of fact could not be proved, or where it did not directly
bear upon or tend to prove an issue or the issues in the
case, the judge would not be deemed to be an incompetent
witness. Several of the cited cases presented a situation
where the judge, before the trial was started, was fully
cognizant of the fact that he would or might be called as
a witness to testify to facts bearing directly upon one or
more of the issues of the case. Of course, in such a case
the fact of the judge's knowledge of facts which would, if
testified to by him, support one side or the other of the
issue to be by him decided, should itself be sufficient to
disqualify him from trying the case, regardless of whether
he was or was not called as a witness, particularly where the
court was to try the questions of fact. In an Oklahoma
case (*Powers* v. *Cook et al.,* 48 Okl. 43 [43 L. R. A. 1915F,
766, 149 Pac. 1121]), it is intimated that, if there existed
(as did not then exist in that state) a statute authorizing

or permitting a judge to testify in a case tried before him, it would not be improper for the judge so to testify.   [3] But it may now be laid down as the generally accepted rule that a judge is not a competent witness in a case being tried before him, and that even where, as in this state, there is a statute which in effect commits the question whether a judge may so testify to the discretion of the court or the judge himself, it will be deemed an abuse of the discretion so vested in the court or judge if the latter's testimony discloses facts without the proof of which the issue such testimony is designed to support cannot be sustained.  To illustrate: If the judge was an eye-witness to the commission of an act constituting, as is true of all crimes, one of the basic elements or ingredients of a public offense, or, where a crime was required to be proved wholly by circumstantial evidence, the judge had personal knowledge of a circumstance which constituted an essential link in the concatenation of circumstances absolutely necessary to the establishment of the guilt of the accused, then, in either case, it would be highly improper and, indeed, a flagrant abuse of the discretion vested by law in him or the court for the judge to testify to such fact or facts and at the same time act as the judge in the case.  And the same principle would prevail where an analogous situation should arise in the trial of a civil action.  The following authorities are interesting and illuminating upon this subject: Greenleaf on Evidence, 16th ed., 305; 3 Ency. of Evidence, p. 215; Jones on Evidence (Civil Cases), 958; 3 Wigmore on Evidence, 25, 26; 1 Chamberlain on Evidence, 745; *Maitland* v. *Zanga,* 14 Wash. 92 [44 Pac. 117]; *Rogers* v. *State,* 60 Ark. 76 [46 Am. St. Rep. 154, 31 L. R. A. 405, 29 S. W. 894]; *People* v. *Dohring,* 59 N. Y. 374 [17 Am. Rep. 349]; *Gray* v. *Crockett,* 35 Kan. 66 [10 Pac. 452]; *Estes et al.* v. *Bridgforth,* 114 Ala. 221 [21 South, 512]; *Shockley* v. *Morgan,* 103 Ga. 156 [29 S. E. 694]; *Baker* v. *Thompson,* 89 Ga. 486 [15 S. E. 644]; *Dabney* v. *Mitchell,* 66 Ala. 495; *Morss* v. *Morss,* 11 Barb. (N. Y.) 510; *McMillen* v. *Andrews,* 10 Ohio St. 112.

   [4] In the present case the more serious aspect in which the circumstance here complained of is to be viewed is in the fact that the judge, without first having been requested by the district attorney to testify, voluntarily offered to

testify, thus affording some ground for the formation by
the jury of the impression that he was throwing the force
of his influence, as the presiding judge, against the accused
and thereby indicating that he was of the conviction that
the defendant was guilty of the crime charged. But, even
with that suggestion in our minds, when we bear in mind
the nature of the testimony so given and other significant
considerations of which we shall later take notice, we still
are unable to persuade ourselves to the conviction that the
fact that the judge did voluntarily become a witness and
testify in the case itself contributed to the result arrived
at by the jury. The present case, in so far as the nature
in probative importance of the testimony of the judge is
concerned, as are also concerned the circumstances which
are to be considered in determining its effect upon the rights
of the accused, is different in several material respects from
most of the cases above referred to and is also such as to
remove it from the strict ban of the general rule announced
by the text-writers whose volumes on evidence are likewise
mentioned. Disregarding the fact that in this state we
have statutory authority for the act of a judge in testifying
in a case on trial before him, the consideration which may
first be suggested as distinguishing this case from those
heretofore mentioned is the fact that the judge's testimony,
while material, was collateral to the main issue. Its pur-
pose was merely to prove by means of secondary evidence
a lost document, similar to the one set forth in the indict-
ment, and which, it was claimed, had been addressed to and
received by Juror Bennetts, at the time that Arnold and
other citizens of Sacramento County who were on the jury
panel referred to received copies of such document, the pur-
pose of proving that Bennetts and other jurors, other than
Arnold, each received a copy of said document at the time
indicated, being designed to show that the motive of the de-
fendant in causing at that time said literature thus to be
generally circulated in Sacramento County was to influence
those citizens who might be selected from the jury panel
to sit in the cases of Barney Brooks et al., to sympathize
with and support the defense set up in those cases, regard-
less of what the character of the evidence therein might be.
In fact, the judge's testimony merely amounted to this:
That it tended to prove one circumstance only which, with

others, would tend to prove another circumstance which, with others, would tend to show that the defendant, with the intent wrongfully to influence jurors who might be called to sit in the cases of Barney Brooks et al. to favor the defendants in said cases, caused to be addressed and sent to many citizens of Sacramento County the literature in question just prior to the date fixed for the trial of said cases. Furthermore, the fact sought to be proved by the fact of the receipt by Bennetts of a copy of the document in question, to wit: That other jurors besides Arnold had each received a copy of said document at or about the time mentioned, was not dependent solely on the testimony that Bennetts had received said document, since there was testimony to the effect that jurors other than Bennetts and Arnold had received, at the time indicated, a copy of the document pleaded in the indictment and that testimony was, obviously, offered and received for the identical purpose for which the testimony relative to the receipt by Bennetts of a copy of the document was offered and allowed. Thus it is perfectly clear that the judge's testimony was not of overruling, even if of more than trifling, importance to the People in the proof of the charge against the defendant. In fact, the testimony relative to the receipt by Bennetts of the literature could have been entirely eliminated from the case or not have been offered, and still there would have been left before the jury ample testimony which, if believed by the jury, would justly warrant them in concluding that the motive or intent with which the literature in question was sent out, at the particular time mentioned, to nearly every juror and citizen eligible to jury duty in Sacramento County was to influence them against any case the People might develop at the trial of Barney Brooks et al. Indeed, the very literature itself thus sent out and which constitutes the foundation of the indictment here affords evidence of a convincing character that such was the motive or purpose of circulating it generally in a county in which there were then pending certain criminal cases growing out of acts denounced by a law which said literature bitterly attacked and condemned. If that was not the motive, why the importunate request (contained in said letter) to those to whom the literature was sent that they pay a visit to the Sacramento County courthouse and gaze upon the har-

rowing picture, so vividly drawn, representing several men upon whom the relentless instrument of persecution was to be turned loose when, on the day set for their trial on a charge of committing an offense against society, they were to face the bar of justice? Why in the same picture is inserted, in perfervid and pathetic coloring, the deplorable condition of sorrow and want into which the family of one of these defendants had been cast by a prosecution growing out of an alleged violation of a law which, the document in effect declares, authorizes a tyrannical invasion of the political and civil rights and personal liberty of the citizens? Why the attempted impeachment in advance of the trial of three witnesses upon whose testimony, mainly, so the document declared, the people were to be required to rely for the proof of the charge against those defendants? These questions, being so plainly self-suggestive from the very character of the literature itself, present evidentiary considerations as to the motive directly actuating its circulation, as explained, which, it may well be assumed, constituted the controlling factors in persuading the jury to the result arrived at by them. At all events, considering the record as a whole, as it has been reviewed herein, we cannot with legal propriety hold that the fact that the judge voluntarily testified as a witness or the character of the testimony given by him has had the effect of producing a miscarriage of justice in this case. In thus concluding, we are not unmindful of the real meaning, scope, and effect which the case of *People* v. *Adams,* 76 Cal. App. 178 [244 Pac. 106], and the cases therein cited, have ascribed to section 4½ of article VI of the constitution. The construction of said provision of the constitution by this court, speaking through Presiding Justice Finch, in the Adams case, is obviously sound and means that, in adopting it into their organic law, the People did not intend that it should be employed to cover up or excuse every disregard of any of the just rights of a citizen in the trial of a case in which his liberty, or, it may be, his life, is at stake. In the present instance, though, it is plainly apparent, from all the considerations to which special notice has above been given, that the jury would not have reached any other verdict than that returned had the judge not offered to testify voluntarily or not testified at all. Assuming that section

1883 of the Code of Civil Procedure represents a valid exercise of legislative power (we do not say that it does not), then certainly the fact that the judge testified under the circumstances indicated cannot justly be held to have been an act involving an abuse of discretion by the court.

[5] We can perceive nothing of a serious nature in their effect on the rights of the defendant in the several other specifications of misconduct on the part of the judge. In fact, in none of the instances here referred to is there any substantial ground for complaint, unless it was the manner of the judge when making the remarks which counsel conceived to be offensive and injurious to his client and of which we have not and in the nature of things could not have the benefit of a reproduction. On one of the occasions complained of the court said to counsel for defendant: "Make your objection, don't take up so much time in statements." The court, of course, had the right to compel the attorney to make his objection before arguing the point thus intended to be raised. Indeed, the orderly way to proceed was as the court suggested. The attorney, however, was not precluded from making his objection, for he did make it after the court interrupted him, as explained. This circumstance is a fair exemplification of the general character of the several acts of the court during the trial upon which the defendant predicates his complaints that the court was guilty of misconduct prejudicial to the rights of the accused, and, therefore, further special notice of the other assignments in that particular need not be herein given.

[6] The next assignments involve charges of misconduct on the part of the district attorney in the presentation of the case for the People. Two of these only require special consideration herein. The district attorney, J. J. Henderson, offered to prove by the stenographic reporter of the court that a certain document was a copy of the original introduced at the former trial of this case. The attorney for defendant, R. W. Henderson, objected to the proposed testimony on numerous specific grounds. Replying to said objections, the district attorney stated, among other things, that counsel for defendant had admitted in his appeal to the appellate court in the former case that the document he offered in the present case "was a true and correct copy."

To which remark counsel for defendant retorted: "Now I want to characterize that statement of the district attorney and the repetition of it, that I have admitted anything with reference to the former case, as incompetent, irrelevant and immaterial, and *made for the deliberate purpose of prejudicing this case before the jury.*" To that statement the district attorney replied: "If the court will permit me, I want to characterize that statement as absolutely malicious and mendacious." The document then under discussion, which was introduced in evidence at the first trial of the defendant and which, the original having been lost, the district attorney was endeavoring to prove by means of secondary evidence or a copy thereof, was entitled: "Ten I. W. W.'s Going to Jail in Sacramento, Singing," referring to the conviction and sentence of ten members of the organization named in the superior court of Sacramento County some time prior to the trial of the instant case. The particular document, or a copy thereof, was mailed, with the document described in the indictment, to Juror Arnold and other jurors and citizens of Sacramento County at the time mentioned and copies of the same, with other I. W. W. literature, were found at the headquarters of said organization in San Francisco, and it was from said headquarters that the defendant caused to be mailed to the citizens of Sacramento County the literature set out in the indictment, together with the document entitled, "Ten I. W. W.'s Going to Jail," etc. The theory of the People, in introducing the last-mentioned document at the first as well as at the present trial, was that the fact that said document, with other I. W. W. literature, was found at the San Francisco headquarters of the I. W. W., from which the said document and the document referred to in the indictment were mailed to the citizens of Sacramento County, would tend to prove the defendant's connection with the I. W. W. and his consequent interest in the cases of Barney Brooks et al., and that that fact would in turn tend to show that the motive or purpose of sending out said literature to said citizens was to create a sentiment of sympathy for Brooks et al. which might have the effect of so affecting the minds of jurors called to sit in those cases as to prevent them from giving a fair and proper consideration to any case which might be made by the People against said defendants. The district attorney

was clearly wrong in making the statement exception to which by defendant's counsel we are now considering; but it is not believed that the statement prejudiced the defendant. This conclusion is founded upon the consideration, above fully gone into, that the defendant admitted that he caused both documents to be distributed in Sacramento County and that they were mailed from the place in San Francisco above referred to; that, furthermore, his membership of the I. W. W. was proved by his membership card, which was introduced in evidence. In fact, he did not deny his membership of the organization, and the fact of his membership of the organization is itself a circumstance of singular significance as in proof of an unswerving sympathy for Brooks et al. in their predicament as accused violators of public law and, consequently, a motive to extricate them from such predicament by any available means, since the prosecution of those individuals for the violation of the mandates of the Criminal Syndicalism Law involved, as is known as a matter of common notoriety, an attack upon the organization of which he was a member.

[7] The second assignment under the present head to which special notice should be given is the outgrowth of the characterization by the district attorney, in his argument to the jury, of the I. W. W.'s as "an outlaw organization." Introduced into this case was a large quantity of I. W. W. literature, in which the principles and purposes of the organization are promulgated. The effect of these principles and purposes, if crystallized into an actuality, would be to destroy all government formed on rational lines. Indeed, well may it be suggested that a government, if properly it could be called such, established in accord with those principles, would be comparable, politically, to the situation, as astronomically described, in that space of incomprehensible immensity in the Southern heavens, near the Southern Cross, where (old astronomers have said) "the Great Author of celestial mechanism has left the chaos that was in the beginning," and in which "the eye of man, with the aid of the powers of the telescope, has been unable to discover nebulae, or asteroid, or comet, or planet, or star, or sun." Thus viewing the proclaimed principles and avowed purposes of the said organization, an American citizen wedded to the political principles upon which our government is

founded and has firmly rested for near a century and a half would not be accused of going far afield in denouncing as an "outlaw organization" an organization which stands for principles and policies which, as may well be said of the political principles of the I. W. W., would inevitably lead to political chaos if ever put into practical operation. But, beyond all this, there can be no doubt that, as a matter of common knowledge, every juror sitting in this case knew that many members of the I. W. W., prior to the trial of the instant case, had been convicted in the courts of this state of the crime of criminal syndicalism, the gist of said crime being in the unlawful methods resorted to for the carrying out of the general political principles of said organization rather than in those principles themselves. It would be idle to argue that the jurors as well as every other citizen of Sacramento County, where, as is also known as a matter of common knowledge, many of such convictions were obtained, did not and do not, in point of fact, know of such convictions. While it is not necessarily to be assumed as true that, from the knowledge of the fact of such convictions, the jurors were of the unqualified opinion that the organization was *per se* an "outlaw organization" or abstractly is justly to be called such an organization, still they may be assumed to have known from such knowledge of such convictions that the district attorney's characterization of the organization, as indicated, was based upon facts with which they (the jurors) were themselves perfectly familiar and that from those facts the conclusion expressed by that officer as to the general character of the organization might reasonably be deduced. Bearing in mind all the considerations thus adverted to and also the convincing character of the evidence presented by the People to support the indictment, as well as certain admissions of the accused which, when considered with the general circumstances developed, are of an inculpatory nature, it would, in our opinion, involve a clear transgression of the legitimate power of this court as one of review only to declare, as a matter of law, that the district attorney's characterization in his argument to the jury of the I. W. W. as an "outlaw organization" contributed to the result arrived at by the jury as indicated by the verdict. [8] It is true that an attorney, in his argument to the jury, must be certain not to import

any opinion or suggestion into the case which is not fairly
and reasonably within the legitimate bounds of the record
as made, yet it is equally true that in the exercise of this
right of argument an attorney may give his own analysis
of and interpretation to any act or fact of which there is
substantial competent evidence in the case and assign to such
act or fact any motive or intent which is consistent with the
nature thereof and the circumstances under or by which it
was produced.   (See 8 Cal. Jur., sec. 602, p. 621, and cases
named in the footnotes.)

The other specifications of misconduct by the prosecuting
officer demand no special notice herein.   They involved
mere harmless exchanges of asperities by and between coun-
sel—the one as often the aggressor as the other—and, as to
the effect of the verbal brickbatting, in the parlance of the
gladiatorial arena, it truly may be said that each ''round''
was a ''draw,'' and so throughout the trial at frequent in-
tervals did the Hendersons, *pro* and *con,* continue (in a
figurative sense) to

''Fence and push, and, pushing, loudly roar,''

But ''their dewlaps and their sides'' still free from gore!
Or, in other words, the verbal tilts spent their fury without
hurting anybody.

[9]   The complaint that the court erred in allowing the
preamble of the political platform and other literature of
the I. W. W. organization to be introduced in evidence by
the People is devoid of legal force.   As suggested above, the
documents here referred to were offered and received in evi-
dence not only to prove the character of said organization,
of which defendant was a member, but upon the theory that
they would further tend to show that defendant, being in
full accord with all that is set forth in said preamble and
other literature, was of the view that Brooks et al. were
being persecuted for having exercised their constitutional
right to stand for and advocate a drastic change in political
and industrial control in our country and that, therefore,
the circulation of the document mentioned in the indictment
and other literature in Sacramento County was to influence
a verdict of acquittal in those cases.

Nor is there merit in the criticism directed against certain
instructions given and of the action of the court in disallow-

ing certain instructions requested by defendant. The charge of the court involved a full, fair, and correct statement of every rule or principle of law pertinent to the case as made by the indictment and the proofs.

The judgment and the order denying a new trial are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 9, 1926.